Marian AUGUSTYNIAK, Plaintiff,

v.

Edward I. KOCH, Harriet P. George, Anthony Gliedman, Bruce Kramer, Donald Rodda, Lisa Siano, Theodore R. West, Patrick Medford, Edward A. Pichler, the City of New York, Department of Housing Preservation and Development of the City of New York, and John Doe and Richard Roe, Deputy Sheriffs of the City of New York, County of New York, Defendants.

No. 82 Civ. 0105 (KTD).

United States District Court, S.D. New York.

May 17, 1984.

T. James Bryan, Levine, Hoffman & Crispo, New York City, for plaintiff; Hillel J. Hoffman, New York City, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendants; Judith A. Levitt, Thomas C. Crane, New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, Marian Augustyniak, has brought this action against New York City, New York City Mayor Edward Koch, the New York City Department of Housing Preservation and Development ("HPD"), three HPD attorneys—Bruce Kramer, Donald Rodda, Lisa Siano—HPD Commissioner Anthony Gliedman, Housing Part Civil Court Judge Harriet P. George, Sheriff of New York County Edward Pichler, two unnamed Sheriff's deputies, the Warden of the Queens House of Detention Theodore West, and Patrick Medford. Augustyniak's complaint alleges eight federal, and seven pendent state law causes of action. All plaintiff's federal claims are based on 42 U.S.C. § 1983. I dismissed the complaint against defendant Judge Harriet P. George by endorsement dated May 19, 1982. The remaining defendants, save Patrick Medford, move for summary judgment pursuant to Fed.R.Civ.P. 56(a). For the reasons that follow, defendants' motion is granted.

## BACKGROUND

The facts as set forth principally in plaintiff's complaint are as follows. In September 1977, Augustyniak purchased from the City an apartment house located at 515 West 187th Street, New York, New York, executing an $11,000 mortgage with the City. Plaintiff thereafter attempted to obtain an HPD or bank loan.

In November 1980, three years after his purchase, plaintiff directed a letter to Commissioner Gliedman advising him of the delay Augustyniak was experiencing in obtaining an HPD loan. He also stated that the building's heating system was too weak to use at full capacity. Plaintiff telephoned Gliedman's office concerning his pending loan application on November 12, 18, 19, and December 2, 1980. On each occasion, Augustyniak spoke to Gliedman's secretary.

On or about November 18, 1980, HPD, by its attorneys Kramer and Siano, commenced a proceeding by order to show cause (*HPD v. Augustyniak*, New York City Civil Court, Housing Part 527/80) returnable December 19, 1980, requiring plaintiff to show cause why he should not be required to provide heat and hot water in accordance with the Dwelling Law and Housing Maintenance Code. Under the City's Administrative Code sections D26–53.01 and D26–53.03 and the City's Civil Court Act section 110, HPD could institute proceedings to require a landowner to correct housing violations and to secure continuing compliance.

At the hearing on December 19, 1980, HPD was represented by Siano, and Augustyniak appeared *pro se*. A transcript of the hearing reveals that two tenants testified to the lack of heat and hot water. Plaintiff submitted opposition papers, cross-examined both tenants, and testified on his own behalf. Augustyniak's only argument at the hearing for his failure to provide heat and hot water was his lack of funds. At the end of the hearing, Judge George orally granted HPD's motion and ordered Augustyniak to provide heat with-

in forty-eight hours or face contempt sanctions.

During the next few days, plaintiff asserts, a damaged gas main that Consolidated Edison Company was repairing was shut off preventing operation of plaintiff's gas-ignited boiler. On December 24, 1980, a pipe in plaintiff's building burst and all water to the building was shut off. Earlier that same day Siano had addressed a letter to Judge George noting the continuing lack of heat in plaintiff's building. In the letter, a copy of which was sent to Augustyniak's home address, Siano requested that the case be placed on the active calendar for December 30, 1980, for a contempt proceeding against the plaintiff. No formal motion or application for an order to show cause, however, was made as required by N.Y.Jud.Law § 756 (McKinney 1983). On December 30, 1980, after two witnesses testified to the continuing lack of heat and hot water, Judge George directed Siano to submit an order fining plaintiff $10,000 and ordering the issuance of a warrant of commitment against the plaintiff for thirty days imprisonment. This order, signed by Judge George on January 6, 1981, permitted the release of Augustyniak before service of the full thirty days imprisonment upon plaintiff's provision of heat and hot water.

On January 9, 1981, at 8:00 a.m. in front of the 515 West 187th Street building, two deputy sheriffs arrested plaintiff. Siano, who accompanied the deputies, allegedly made defamatory statements at that time. Augustyniak was then transported to the Queens House of Detention where he was processed and subjected to a body-cavity search. Plaintiff was incarcerated for sixteen days until January 26, 1980, when the Appellate Term, First Department granted a stay of the commitment order on the consent of the City's Corporation Counsel pending appeal.[1]

On the evening of January 9, 1981, plaintiff's first day of imprisonment, Mayor Koch held a press conference at which plaintiff asserts the Mayor, without mentioning Mr. Augustyniak by name, referred to the imprisonment of landlords for failure to provide heat and hot water.

On February 5th and 6th, 1981, plaintiff was interviewed by a Channel 5 news reporter. During the interview, plaintiff stated that the City in a mere four weeks had brought about the total destruction of all of his work to restore his building. This comment was broadcast on the Channel 5 10:00 news program on February 6, 1981. Augustyniak also asserts that at the conclusion of the news report, the reporter related allegedly defamatory statements made by unidentified City officials.

Thereafter, HPD moved pursuant to Article 7A of the New York Real Property Actions and Proceedings Law to appoint an administrator to manage plaintiff's building. Section 770 of the New York Real Property Actions and Proceedings Law authorizes HPD to bring actions and proceedings under Article 7A for the appointment of an administrator to collect rents and to correct housing code violations. Plaintiff twice moved for Judge George to recuse herself; both motions were denied. On May 14, 1981, Judge George issued a judgment appointing Patrick Medford as 7A administrator of the building.

On July 24, 1981, an action was instituted against Augustyniak in the Criminal Court in the City of New York with respect to an elevator violation in his building. The proceeding was dismissed, however, because the 7A administrator Medford rather than Augustyniak was in control of the building at that time. Nevertheless, a warrant had already issued. Therefore, by letter dated September 3, 1981, HPD notified plaintiff that the warrant would not be executed. Neither plaintiff nor defendants have taken any steps to expunge the warrant.

In September 1981, the City instituted an action against Augustyniak seeking to foreclose the mortgage held by the City of

---

1. Subsequently on December 8, 1981, the Appellate Term, First Department reversed Judge George's January 6, 1981 order on the ground that the contempt citation procedure had not been in compliance with judiciary law section 756.

New York because of the substantial arrears due by plaintiff. The application was made *ex parte* pursuant to the terms of the mortgage which expressly permitted "the appointment of a receiver, without notice." Defendant Gliedman was appointed receiver of the premises. On November 17, 1983, Justice Allen Murray Myers issued a decision granting the City's motion for summary judgment seeking foreclosure of the mortgage on the premises and reversion of the premises to the City.

In January 1982, plaintiff instituted this action asserting eight causes of action based on 42 U.S.C. § 1983, and seven pendent state law causes of action. The federal causes of action, in brief, are as follows.

Plaintiff's first cause of action alleges that defendants' initiation of the contempt proceeding without statutory notice violated section 1983. The second cause of action is based on Judge George's decision ordering a $10,000 fine and issuance of a warrant for his arrest and imprisonment. Plaintiff's fourth cause of action alleges violation of section 1983 for plaintiff's arrest and detention in the Queens House of Detention. Augustyniak's sixth cause of action alleges a deprivation of liberty on the basis of his sixteen-day imprisonment in the Queens House of Detention. The tenth cause of action alleges that the defendants "in having an Administrator appointed to manage Plaintiff's building without good cause, issuing and failing to expunge an unjustified criminal violation warrant against Plaintiff, and having a receiver appointed to take over Plaintiff's building without having prior notice to him, in retaliation for Plaintiff's public criticisms of the ... defendants, violated Plaintiff's rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983." Augustyniak's thirteenth cause of action asserts that the contempt proceeding, the warrant for his arrest, and his imprisonment were part of a conspiracy to deprive him of his liberty in violation of the due

process clause. The fourteenth cause of action alleges that the appointment of a 7A administrator, the failure to expunge the criminal warrant, and the appointment of a receiver was a conspiracy to punish plaintiff for his assertion of his First Amendment rights. Finally, the last cause of action alleges that HPD's patterns and practices in initiating contempt proceedings without statutory notice violated section 1983.[2] Plaintiff's complaint sought compensatory and punitive damages and in addition sought injunctive relief. Plaintiff's federal claims against each defendant will be dealt with *seriatum*.

## DISCUSSION

### 1. Defendants Kramer, Rodda, and Siano

■ During the period in question, defendants Kramer, Rodda, and Siano were all attorneys enforcing compliance with New York City administrative and statutory codes. These administrative codes and statutory regulations expressly permitted the initiation of civil proceedings. Although they did not permit the sanction of contempt without appropriate statutory notice, plaintiff does not deny that such a sanction was permissible if properly obtained. The defendant attorneys, thus, were acting within the scope of their duties as executive officials enforcing the municipalities' laws. As such, defendants Kramer, Rodda, and Siano are immune from liability for these actions carried out within the scope of their legal enforcement duties. *See Imbler v. Pachtman*, 424 U.S. 409, 424–25, 96 S.Ct. 984, 992, 47 L.Ed.2d 128 (1976); *see also Ledwith v. Douglas*, 568 F.2d 117, 119 (8th Cir.1978) (state attorney immune from suit for initiating civil deceptive-practices action). Similarly, defendants' involvement in the appointment of a 7A administrator, and the subsequent mortgage foreclosure and receiver-appointment proceedings, were all within the scope

**2.** Plaintiff's seven pendent state law causes of action are as follows: malicious prosecution (Third), false arrest (Fifth), false imprisonment (Seventh), defamation by Mayor Koch (Eighth), defamation by HPD and HPD employees (Ninth), and negligent destruction of property (Twelfth).

of their statutorily defined legal enforcement duties. *See Powers v. Coe,* 728 F.2d 97, 103–105 (2d Cir.1984) (affirming in relevant part district court's dismissal of section 1983 claims on the basis of prosecutorial immunity). Therefore, the section 1983 claims that are asserted in the complaint against defendants Kramer, Rodda, and Siano are dismissed.

2. **Defendants HPD and Commissioner Gliedman**

■ There are several reasons for the dismissal of this action against defendants Gliedman and HPD. First, the complaint must be dismissed because plaintiff in opposition to defendants' sworn affidavits has presented no evidence which suggests that Commissioner Gliedman or HPD were actually involved in the initiation or conduct of the contempt, administrator appointment, and mortgage foreclosure proceedings. The only possible indication that Gliedman had knowledge of any of the proceedings involves the January 9th press conference in which Mayor Koch made allegedly defamatory remarks concerning plaintiff. No evidence, however, suggests that Gliedman engaged in any of the allegedly improper conduct. As such, defendants Gliedman and HPD cannot be held liable. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978). *Respondeat superior* is not a valid basis for liability under section 1983. *See Monell v. Department of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Rizzo v. Goode,* 423 U.S. 362, 375–77, 96 S.Ct. 598, 606–07, 46 L.Ed.2d 561 (1976).

■ Second, even if Commissioner Gliedman had been connected with the initiation of proceedings against plaintiff, he would appear to be immune for the supervisory actions he performed. *See Butz v. Economou,* 438 U.S. 478, 515–16, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978) ("the discretion

which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from the decision was less than complete"). Again, there was express statutory authority for the enforcement actions taken by HPD and the HPD officials. Acting within the scope of their statutory mandate, therefore, the agency and its officials are immune from suit under section 1983. Accordingly, the federal claims in plaintiff's complaint also are dismissed as against HPD and Commissioner Gliedman.

3. **Defendants Sheriff Pichler, Warden West, and the Unnamed Deputy Sheriffs**

■ Plaintiff asserts a section 1983 claim for false arrest against the New York County Sheriff, his deputies, and the warden of the Queens House of Detention. Plaintiff, however, has made no allegation and presented no support in opposition to the summary judgment motion that suggests that Sheriff Pichler or Warden West were in any way personally involved with plaintiff's arrest and imprisonment. For that reason alone, the claims against them must be dismissed. *See Monell v. Department of Social Services,* 436 U.S. at 691, 98 S.Ct. at 2036. In addition, a second reason necessitates dismissal of the action as against these defendants; these individuals are entitled to a good faith qualified immunity that has not been overridden by plaintiff's submissions in opposition to this motion. *See Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

■ The deputy sheriffs executed a warrant of commitment effecting plaintiff's arrest on the basis of a facially valid warrant issued by a court with jurisdiction. The mere fact that the warrant was allegedly obtained in a procedurally improper manner does not eliminate this good faith immunity defense.

The common law has never granted police officers an absolute and unqualified immunity, and the officers in this place do not claim that they are entitled to one

.... Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved .... A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. *Pierson v. Ray,* 386 U.S. at 555, 87 S.Ct. at 1218 (citations omitted). In *Pierson,* the Court went on to hold that the defense of good faith and probable cause was available to the police officers in an action under section 1983. *Id; see also Michigan v. DeFillippo,* 443 U.S. 31, 35–40, 99 S.Ct. 2627, 2630–33, 61 L.Ed.2d 343 (1979) (the fact that the ordinance under which a police officer in good faith makes the arrest is later declared unconstitutional does not vitiate probable cause to arrest for violation of the ordinance). Such a good faith defense normally would not be appropriately resolved on a motion for summary judgment. Plaintiff, however, has not alleged or provided any evidentiary support whatsoever in opposition to this motion which would put the issue in dispute. *Cf., Harlow v. Fitzgerald,* 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2737–39, 73 L.Ed.2d 396 (1982) (in a *Bivens* suit government officials good faith immunity could be determined on a motion for summary judgment). Accordingly, plaintiff's section 1983 claims are dismissed as against the deputy sheriffs, Sheriff Pichler, and Warden West.

4. Defendant City of New York

▮ Finally, Augustyniak, in his fifteenth cause of action, asserts that the City, through its agent HPD, maintained a policy or practice of moving to have persons held in contempt without due process. To establish such a violation of section 1983, the plaintiff "is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional

right." *Batista v. Rodriguez,* 702 F.2d 393, 397 (2d Cir.1983). Thus, plaintiff must allege that the defendants "maintained or practiced an unconstitutional or unlawful policy or custom and ... that the policy or custom 'caused' or was the 'moving force' behind the violation." *Dominguez v. Beame,* 603 F.2d 337, 341 (2d Cir.1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980). The mere citation of the single incident involving the plaintiff, without more, does not present a factual dispute concerning either the existence of a policy or the causal nexus between a policy and plaintiff's alleged constitutional deprivation. *See* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him").[3] Plaintiff has had over two years to develop through discovery evidence in support of his assertion that the City maintains an allegedly unconstitutional policy of holding persons in contempt without notice. In opposition to the City's motion he has presented nothing. Accordingly, the section 1983 claims in the complaint against the City of New York are dismissed.

5. Pendent State Law Claims

▮ In addition to the eight federal causes of action which I have dismissed against all defendants, plaintiff has alleged seven state law causes of action. Defendants also move to dismiss all but one of these causes of action. Many of the issues of state law raised by this aspect of defendants' motion, however, are unsettled. For example, the extent of Mayor Koch's liabili-

---

**3.** Defendants Koch and Medford are only named in the pendent state law claims. Although Medford did not expressly enter into the summary judgment motion, the dismissal of these claims also applies to him because there is no subject matter jurisdiction.

**800**

ty for statements made at a press conference in part depend on the vague contours of a state law immunity defense. *Compare City Firefighter's Union v. Duci,* 104 Misc.2d 498, 428 N.Y.S.2d 772 (1976) (mayor has at least qualified, if not absolute immunity for press conference statements), *with Clark v. McGee,* 49 N.Y.2d 613, 404 N.E.2d 1283, 427 N.Y.S.2d 740 (1980) (no absolute immunity for radio station interview statements). Therefore, it is not appropriate to exercise pendent jurisdiction over these claims to determine their validity under state law. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See also Dunton v. County of Suffolk,* 729 F.2d 903, 910 (2d Cir.1984) (court should not retain jurisdiction over pendent state law claims when the federal claims are not substantial or meritorious). Accordingly, plaintiff's pendent state law claims are dismissed.[4]

## CONCLUSION

In sum, the complaint is dismissed. It is dismissed as against defendants Gliedman, Kramer, Rodda, Siano, and HPD on the basis of either a prosecutorial immunity defense, or lack of personal involvement. It is dismissed against defendants Pichler, West, and several unnamed deputy sheriffs on the basis of plaintiff's failure to put into dispute the issue of defendants' good faith immunity defense. The complaint is dismissed against the City of New York for plaintiff's failure to establish sufficiently the maintenance of an unconstitutional custom or policy. Finally, the causes of action alleging violations of state law, including those against defendants Koch and Medford, are dismissed for lack of jurisdiction.

Defendants' motion for summary judgment is granted, and the complaint is dismissed in its entirety.

SO ORDERED.

4. Plaintiff's often rambling affidavit merely repeats the allegations of his complaint with little, if anything, added. *Cf. Wyler v. United States,*

725 F.2d 156, 160–61 (2d Cir.1983) (*Bivens* action dismissed in the face of uncontroverted affidavits).