OPINION OF THE COURT
Gabrielli, J.
We are called upon to determine whether a town supervisor is absolutely immune from liability for allegedly defama *616 tory statements made concerning a town employee during the course of an interview with a representative of a local radio station. For the reasons discussed below, we conclude that, in the circumstance here presented, no absolute privilege attaches to such statements.
This is an action seeking to recover damages for allegedly defamatory statements made by defendant, who had assumed the office of Town Supervisor of the Town of Peru in January, 1978. Plaintiff was the town clerk, and had also served as secretary to the previous town board. At the first meeting of the town board in 1978, plaintiff was not reappointed to the position of secretary, although she of course retained her elective position as town clerk. Instead, defendant’s wife was appointed secretary to the town board. At the next meeting of the board, a resolution proposed by defendant was adopted fixing the salary of the secretary at $3,000 a year. It is alleged that during that meeting defendant made several comments suggesting that plaintiff had been involved in a scheme to improperly and illegally raise the secretary’s salary from $3,000 to $3,500 in the fall of 1977. The next morning, defendant was contacted by a local radio station reporter, and in discussing the increase in the secretary’s salary in 1977, defendant is alleged to have declared: "The work is done in Mrs. Clark’s [the plaintiff] hand, and I would assume that the changes were made by her as they are in her hand. She also gave me a payroll book which listed her name by the position of secretary, with the figure of $3,500, which she was aware to my knowledge, was aware that the figure was only $3,000”. Plaintiff subsequently commenced this action, alleging that this statement was false and defamatory and was made with actual malice in that defendant was aware that the statement was false.[1]
In his answer, defendant denied most of the allegations of the complaint. In addition, defendant pleaded an assortment of defenses and affirmative defenses, including the absolute immunity at issue on this appeal, a qualified privilege supported by the absence of actual malice, and the truth of the allegedly defamatory statement. Plaintiff then moved to dis *617 miss all defenses, and defendant cross-moved for summary judgment on the basis of "each and every defense” pleaded in the answer. Special Term dismissed the claim of absolute privilege and all other pleaded defenses except those of qualified privilege and truth, and denied defendant’s cross motion for summary judgment on the ground that there existed questions of fact concerning the applicability of the remaining two defenses in this case.[2] On appeal by defendant, the Appellate Division reversed and granted summary judgment to defendant, concluding that defendant was entitled to an absolute immunity. Plaintiff now appeals as of right to this court, pursuant to CPLR 5601 (subd [a], par [ii]). There must be a reversal, because no absolute privilege attached to defendant’s statements.
Initially, we note that the absolute privilege which defendant claims is that complete immunity from liability for defamation which is afforded "an official [who] is a principal executive of State or local government or is entrusted by law with administrative or executive policy-making responsibilities of considerable dimension” (Stukuls v State of New York, 42 NY2d 272, 278), with respect to statements made during the discharge of those responsibilities about matters which come within the ambit of those duties (see Sheridan v Crisona, 14 NY2d 108, 113; Lombardo v Stoke, 18 NY2d 394). This privilege is similar to that traditionally associated with legislative and judicial proceedings (see Stukuls v State of New York, 42 NY2d, at pp 275-276, supra; Toker v Pollak, 44 NY2d 211; Prosser, Torts [4th ed], § 114) in that it is premised upon "considerations of public policy and to secure the unembarrassed and efficient administration of justice and public affairs” (Hemmens v Nelson, 138 NY 517, 523). It serves to *618 ensure that public officials will be free to speak their minds openly and bluntly as is required for the proper performance of their duties, without subjecting themselves to the possibility of vexatious and burdensome lawsuits. Absent such protection, an official might hesitate to engage in that frank and sometimes sharp debate which is so necessary for the development of public policy and the sound management of public affairs. This privilege is of particular importance today, in light of the growing movement towards open government (see, e.g., Public Officers Law, art 6 [Freedom of Information Law]; Public Officers Law, art 7 [Open Meetings Law]). In the same vein, the privilege is intended to protect important public servants from "suits which would consume time and energies which would otherwise be devoted to governmental service” (Barr v Matteo, 360 US 564, 571). In sum, "[t]he privilege exists to protect those who bear the greatest burdens of government or those to whose official functioning it is essential that they be insulated from the harassment and financial hazards that may accompany suits for damages by the victims of even malicious libels or slanders” (Stukuls v State of New York, 42 NY2d, at p 278, supra).
While the absolute privilege is thus a creature of strong public policies (see Cheatum v Wehle, 5 NY2d 585), there do exist powerful countervailing considerations which preclude broad application or expansion of this privilege. Public office does not carry with it a license to defame at will, for even the highest officers exist to serve the public, not to denigrate its members. Although the needs of effective government mandate that certain important officials be absolutely privileged with respect to statements made in the course of and concerning their public responsibilities, it is yet true that "a balance must be struck between this objective and the right of an individual to defend himself against attacks upon his character” (Toker v Pollak, 44 NY2d, at pp 222-223, supra). For these reasons, the privilege is not to be extended liberally, and instead must be carefully confined to that type of situation in which the protection provided by the privilege will serve a necessary societal function (see Toker v Pollak, 44 NY2d 211, supra; Stukuls v State of New York, 42 NY2d 272, supra; Cheatum v Wehle, 5 NY2d 585, supra). Thus, even a public official who is otherwise entitled to immunity "may still be sued if the subject of the communication is unrelated to any matters within his competence * * * or if the form of the *619 communication — e.g., a public statement — is totally unwarranted” (Lombardo v Stoke, 18 NY2d 394, 401, supra).
Applying these principles to the instant case, the first question is whether a town supervisor may ever be entitled to this type of privilege. As is noted above, the nonjudicial, nonlegislative absolute privilege involved in this dispute extends only to high officials of the executive branch of State and local government (compare Stukuls v State of New York, 42 NY2d 272, supra, with Sheridan v Crisona, 14 NY2d 108, supra). Although this court has not previously had occasion to determine whether a town supervisor is such an officer, it appears evident that the chief executive officer of a local governmental unit such as a town (see Town Law, § 29) is in need of such protection if he is to properly perform his public duties (see Duffy v Kipers, 26 AD2d 127). Hence, we conclude that a town supervisor is absolutely immune from liability for allegedly defamatory remarks related to his responsibilities and made during the course of the performance of his duties.
This does not mean, however, that absolute immunity attaches to every statement made by a town supervisor. Both the subject of the statement and the circumstances in which it is made are of importance in determining whether a particular statement was privileged. Obviously, to illustrate one extreme, a statement about the suitability of a potential appointee to a position of trust in town government, made during a meeting with other officials participating in that appointment process, would be absolutely immune. On the other hand, a statement impugning the integrity of a mechanic who had just completed repair work on the supervisor’s private automobile, made at a social gathering, would not be entitled to the benefit of an absolute privilege. More difficult are cases such as this, which fall somewhere between the two extremes. Here, it is clear that the subject matter of the allegedly defamatory comments made by defendant are related to his public duties. As town supervisor, defendant is concerned with the expenditure of public funds and the possibility that a fraud had been committed upon the town by a public official. This alone, however, is not necessarily sufficient justification for assertion of absolute immunity, for the particular forum in which the remarks are made also plays a part in determining the availability of the privilege. For example, in Cheatum v Wehle (5 NY2d 585, supra), this court refused to extend an absolute privilege to a State Conservation Commis *620 sioner who had allegedly made defamatory comments about the ability and integrity of a member of his staff during the course of an after-dinner speech. While recognizing that the commissioner would have been entitled to an absolute privilege had he made the same comments in another context, such as a report to the Governor or an internal investigation, the court concluded that an after-dinner speech simply lacked the requisite connection with the performance of his public duties. Absent such a connection, application of an absolute privilege would effectuate no fundamental public interest.
In the instant case, defendant seeks immunity with respect to a statement he made about another public servant during the course of a news conference. Certainly, such circumstances immediately suggest the significance of a free press and free speech in our society, and the importance of free and open debate on matters of public interest. These concerns, however, are protected by an assortment of qualified privileges either arising from the common law or stemming from the First Amendment to our Federal Constitution (see New York Times Co. v Sullivan, 376 US 254; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369; Chapadeau v Utica Observer-Dispatch, 38 NY2d 196; Prosser, Torts [4th ed], §§ 115, 118). The absolute immunity with which we are here concerned, in contrast, is posited upon other considerations, and is aimed more directly at the protection of that speech which is necessary to the efficient operation of the government. In short, this type of immunity is designed in large part to foster forthright discussions within the apparatus of the government, and not as an additional protection for our treasured freedom of speech. Thus, the guiding principle in determining the availability of this privilege must be the relationship between the speaker’s fulfillment of his public duties and the circumstances of his speech.
So viewed, defendant’s comments are not entitled to an absolute privilege, for the simple reason that they were not made during his performance of an essential part of his public duties. In short, a public accusation of this nature is not a central part of defendant’s public responsibilities. Although there do exist strong reasons for protecting such speech, the absolute immunity at issue on this appeal was not intended to serve such a function, and there exists no reason to stretch it out of shape in order to accommodate such situations, for the *621 qualified privileges mentioned above are available to protect any such comment not made with actual malice.
This is not to suggest that no public statement may ever be covered by the absolute privilege. Surely, there exist a number of situations in which a high public official might well be required to make a public statement as a part of his public obligations. For example, a direct attack upon the integrity of a governmental unit might impel a public response by the head or governing body of that entity (see, e.g., Lombardo v Stoke, 18 NY2d 394, supra). We would also emphasize that the release to the public of official reports containing allegedly defamatory remarks that are otherwise privileged because the preparation of the report was a necessary part of the official’s duties, is also privileged if such disclosure is required by law (see Sheridan v Crisona, 14 NY2d 108, 113, supra). In such cases, the privilege attaches to the public statement because making such a statement is a part of the official’s duties. Here, in contrast, the alleged communication was not a part of the performance of defendant’s public duties. Hence, he is not entitled to an absolute privilege.
Accordingly, the order appealed from should be reversed, with costs, and the case remitted to Supreme Court, Clinton County, for further proceedings not inconsistent with this opinion.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler, Fuchsberg and Meyer concur.
Order reversed, etc.

. It should be noted that this action is premised upon the statement to the press, and does not involve the comments made during the meeting of the town board. Hence, we are not called upon to determine whether the absolute privilege extended to legislative proceedings is applicable to the meetings of a town board (see Prosser, Torts [4th ed], § 114, at p 782; Libel and Slander, Ann., 40 ALR2d 941).

. Although defendant did not specify the nature of the qualified privilege he claimed in his answer and motion papers, we presume he was referring to the constitutionally mandated privilege protecting commentary concerning public officials (see New York Times Co. v Sullivan, 376 US 254; Rinaldi v Holt, Rinehart & Winston, 42 NY2d 369). That privilege is not absolute, and may be defeated by proof of actual malice. Plaintiff has contended that defendant was aware that the statement was false, which, if proven, would certainly suffice to defeat the qualified privilege. As is noted above, defendant’s motion for summary judgment on this ground was denied by Supreme Court, because of the perceived existence of questions of fact. Defendant’s claim for summary judgment on the grounds of qualified privilege appears not to have been asserted before the Appellate Division, and defendant has not raised it defensively before this court as an alternative ground for affirming the order granting summary judgment to defendant. Since it is not our policy to pursue claims not asserted before this court, we do not reach that issue.