GALEN G. KELLY, Respondent, v STATE OF NEW YORK, Appellant.

Third Department, November 5, 1987

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Vernon Stuart* of counsel), for appellant.

*DeGraff, Foy, Conway, Holt-Harris & Mealey (John T. De-Graff, Jr.,* of counsel), for respondent.

## OPINION OF THE COURT

MAIN, J.

Claimant was a licensed private investigator who specialized in "deprogramming" religious cultists. He was hired by the parents of Anthony Colombrito with the hope that he would be able to deprogram their son who had become a member of the Unification Church (hereinafter the Church). On August 14, 1979, claimant, his assistant, Anthony and his parents were at claimant's farmhouse in Ulster County. Several members of the Church arrived at the farmhouse in search of Anthony and when they failed to heed claimant's instructions to leave the premises, claimant and three members of the Church became involved in an altercation during which claimant drew an unloaded handgun. Understandably, this brought an end to the conflict and claimant, after giving the handgun to his assistant, went in the house and called the State Police. The police arrived and, after a brief interrogation and investigation, placed claimant, his assistant and three of the Church members under arrest.

The following day the State Police issued the following press release: "On August 14 at approximately 10-30 AM State Police at Ellenville received report of possible kidnapping and assault with firearms involved on Old Kings Highway, Accord, NY—On responding to the Galen Kelly [claimant] residence

on Old Kings Highway troopers found Mr. Kelly bleeding from a head wound and another male subject with numerous body bruises and abrasions—Investigation revealed Galen Kelly a private investigator with office in Kingston and noted deprogrammer of religious cultists had been retained by the parents of Anthony Colombrito, a 27 year old resident of the Unification Church at Barrytown, NY to kidnap and deprogram Colombrito. The members of the Unification Church/suspected Mr. Kelly was responsible for the disappearance of Mr. Colombrito. Four members were sent to the farmhouse on Old Kings Highway * * * [T]hey were ordered to get off the property by Mr. Kelly. Three of the Unification people (more often referred to as Moonies) remained on the highway in front of the residence while the fourth went to call police[.] While awaiting arrival of troopers Mr. Kelly and one of his associates came out of the house, approached the Moonies on the highway and Mr. Kelly ordered them to leave the area. When the subjects refused to leave, Mr. Kelly assaulted the leader of the group who was later identified as Peter Schepmoes, age 33, knocking Schepmoes to the ground. As Schepmoes struck Kelly in defense, Kelly produced a semi-automatic pistol which he had on his person and proceeded to pistol whip Shepmoes [sic]. Then Mr. Kelly handed the weapon to his associate who held the Moonies at gunpoint until arrival of State Police * * * On discharge from the hospital, Galen Kelly was arrested for unlawful possession of a weapon 2nd degree a Class C felony * * * When interviewed Anthony Colombrito told State Police * * * that he had been kidnapped by Galen Kelly and his associates on August 13 for the purpose of deprogramming. He had been taken to the Kelly farmhouse against his will and held there under constant guard * * * Galen Kelly was arraigned before Rochester Town Justice Harold Lipton and released in his own recognizance pending action of Grand Jury. Additional charges of assault 3rd degree were lodged against Lew Fedyniak, 22 yrs, Ulster Heights NY, an associate of Mr. Kelly; Peter Schepmoes, 33 yrs and Dale Plant, 24 yrs, both Unification Church members residing in Barrytown, NY. Additional charges of kidnapping, felony assault, and weapons charges to be considered by the Ulster County Grand Jury."

The Ulster County Grand Jury returned a "no bill" as to each of the several charges against claimant. An attempt, at the instigation of the State Police, to have claimant indicted on a weapons charge in New Jersey also ended in failure

when a "no bill" was returned in that State. However, claimant's pistol permit was subsequently revoked following a proceeding initiated by the State Police.

As a consequence of these happenings, claimant commenced an action against the State of New York for false arrest, malicious prosecution and libel, contending that the conduct of the police officers was the result of hostile feelings that the State Police possessed against him because of his deprogramming activities. The State moved for summary judgment dismissing the claim and the motion was denied by the Court of Claims. That denial was upheld upon appeal to this court *(see,* 105 AD2d 905). After trial, claimant prevailed only upon the libel cause of action and was awarded $24,000 in damages. The State appeals, contending that (1) since claimant was a public figure the wrong test was applied, (2) the evidence was insufficient to show malice by clear and convincing evidence, (3) there was insufficient evidence to permit a finding that the release was false and defamatory, and (4) the release was privileged.

■ We agree with the Court of Claims that claimant was a public figure. While claimant may not have sought the State and national publicity he received, he was, nonetheless, involved in a field, the deprogramming of cultists, which at the time attracted national interest and was the subject of extensive media coverage. Claimant was not reluctant to submit to interviews or to testify on the subject, nor did he resist the publicity that followed. Public figures have been described as persons who: "have assumed roles of especial prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment" *(Gertz v Robert Welch, Inc.,* 418 US 323, 345; *see, Curtis Publ. Co. v Butts,* 388 US 130, 164). It seems clear that claimant fits this mold. This being so, before claimant is entitled to recover not only must it appear that the implicated defamatory falsehood was uttered with actual malice, but also that the burden of so demonstrating has been met by claimant with "convincing clarity" *(Rinaldi v Viking Penguin,* 52 NY2d 422, 436; *see, New York Times Co. v Sullivan,* 376 US 254, 275, 285-286). Actual malice is defined as "with knowledge that it was false or with reckless disregard of whether it was false or not"

*(Wolston v Reader's Digest Assn.,* 443 US 157, 160). Despite the State's urging to the contrary, a reading of the decision of the Court of Claims in its entirety indicates that it properly applied the actual malice standard.

We are also unable to agree with the State's contentions as to the insufficiency of the evidence. Perusal of the record reveals clear and concise support for the conclusion that the officers acted with malice in preparing and issuing the release. The release parrots the Church members' account of the incident and a senior investigator of the State Police, at trial, conceded that he ignored the statements of claimant and his assistant and used the Church members' statements for the basis of his felony complaint. Further, while the release states that claimant pistol-whipped one of the Church members, Peter Schepmoes, the medical exam reveals only minor bruises at most while claimant had a sizable gash on his head and a concussion. One who has been pistol-whipped would bear more telling signs than found on Schepmoes. Significantly, too, is the attitude and conduct of the police after the Grand Jury returned the "no bill". They encouraged and instigated the filing of charges in New Jersey where another Grand Jury found "no bill". Then they instituted proceedings in Ulster County Family Court for the revocation of claimant's pistol permit. Though occurring after the fact, these facts demonstrate a continuing animus by the police against claimant. Lastly, the Court of Claims found, and so stated in its decision, that the police officer's testimony was far from objective, and examination of the record provides broad support for that conclusion. This case turned in large measure upon the credibility of the witnesses. The Court of Claims had the opportunity to observe their conduct, demeanor and behavior on the stand. It was in a much better position to assess their credibility than is this court and due regard must be given to its decision *(see, Arnold v State of New York,* 108 AD2d 1021, 1023, *appeal dismissed* 65 NY2d 723). The decision of the Court of Claims, finding the press release to have been false and issued with malice, is amply supported by clear and convincing evidence. We find no merit in the State's contention that the release would not be found to be defamatory by the ordinary and average person reading the same. The release, in readily understandable terms, accuses claimant of shameful, abhorrent and brutal behavior and imputes criminal conduct.

Lastly, we find no merit to the State's argument that the

release was privileged because the State Police have an obligation to keep the public informed on criminal activity. State Police officers are not entitled to the protective shield of absolute immunity from the imposition of liability for defamation, which is strictly limited *(see, Toker v Pollak,* 44 NY2d 211). Moreover, if any qualified privilege did exist, a highly doubtful supposition, "even a public official who is otherwise entitled to immunity 'may still be sued if the subject of the communication is unrelated to any matters within his competence * * * or if the form of the communication—e.g., a public statement—is totally unwarranted' " *(Clark v McGee,* 49 NY2d 613, 618-619, quoting *Lombardo v Stoke,* 18 NY2d 394, 401). Hence, any qualified privilege, arguably present, was decimated by claimant's proof and the Court of Claims finding of malice.

MAHONEY, P. J., YESAWICH, JR., LEVINE and HARVEY, JJ., concur

Judgment affirmed, with costs.