**Nicholas NEU, Plaintiff,**

v.

**James P. CORCORAN, individually, and as Superintendent of Insurance of the State of New York and James W. Randolph, individually and as Deputy Superintendent of Insurance of the State of New York, Defendants.**

**No. 88 Civ. 1495 (RWS).**

United States District Court, S.D. New York.

Sept. 22, 1988.

---

Rosner & Goodman, New York City by Andrew J. Goodman, of counsel, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City by Ann Horowitz, August L. Fietkau, Asst. Atty. Gen., of counsel, for defendants.

## OPINION

SWEET, District Judge.

Defendants James P. Corcoran, individually and as Superintendent of Insurance of the State of New York ("Corcoran"), and James W. Randolph, individually and as Deputy Superintendent of Insurance of the State of New York ("Randolph") (collectively the "defendants") have moved pursuant to Rule 12(b)(6), Fed.R.Civ.P. to dismiss the claim filed against them by Nicholas Neu ("Neu") for failure to state a claim upon which relief may be granted. For the reasons set forth below, the motion is denied.

*Facts*

From February 1985 through March 11, 1987, Neu was president of the American Motor Club, Inc. ("AMC"), a New York corporation engaged in selling pre-paid automobile collision contracts to the public.

In 1985, the New York Insurance Department commenced a proceeding against AMC and an individual defendant in the Supreme Court of the State of New York. Neu was deemed a party to that action by the court on April 8, 1987 and was deemed to have answered by October 31, 1985. The petition in that proceeding alleged that AMC was selling insurance to the public in violation of the law of the State of New York.

Based on the evidence adduced at that trial, the New York Supreme Court rendered a decision holding that AMC was engaged in the illegal sale of insurance but that the respondents did not willfully violate the law. The judgment of April 8, 1987 assessed sanctions against Neu and another and appointed Randolph receiver of AMC. That judgment was appealed by Neu. In October 1987, the Appellate Division, First Department affirmed the court below insofar as it held that AMC was engaged in the unauthorized sale of insurance but reversed the judgment to the extent it imposed monetary sanction against Neu based on the ground that Neu's procedural due process rights had been violated.

In June, 1987, after the Supreme Court ruling but before the Appellate Division ruling, while Neu was engaged in the prepaid collision service business in California, the Defendants allegedly made disparaging remarks regarding Neu at a convention of Insurance Commissioners. The Defendants allegedly stated to the California and Louisiana Insurance Commissioners that Neu did not honor contracts, did not repair vehicles, and that he drove AMC into bankruptcy and associated with criminals. Neu, however, contends that it was during Randolph's stewardship that AMC abandoned its members and their vehicles, and that AMC was solvent when he left its employ. Thus, as a result of the Defendants' allegedly false statements Neu claims that his reputation was ruined and that he was forced out of the insurance business.

### Prior Procedure

Neu filed this action on March 4, 1988 alleging deprivation of liberty without due process of law pursuant to 42 U.S.C. § 1983 and common law defamation. The defendants filed this motion to dismiss Neu's claims on April 15, 1988. This court heard oral argument and deemed the motion fully submitted on June 24, 1988.

### Discussion

#### Federal Liability

42 U.S.C. § 1983 creates a cause of action against

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof the deprivation of any rights, privileges, or immunities secured by the Constitution and laws....

Thus, in examining a section 1983 claim, a court must determine "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1980). For the purposes of this motion, the defendants do not challenge that their alleged actions were committed under color of state law. However, they contend that the complaint does not allege the deprivation of a liberty right entitling Neu to a right of action in federal court.

In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *rehrng. denied*, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed. 2d 811 (1977), the Supreme Court held that defamation of an individual by a public official did not deprive that individual of a liberty interest secured by the Constitution. The Court held that while damage to reputation constituted a state law cause of action for defamation, section 1983 could not be utilized to transform all such actions into federal claims through the fourteenth amendment thereby rendering that amendment a "font of tort law." *Id.* at 701, 96 S.Ct. at 1160. The Court, in examining older cases, determined that to be actionable, damage to reputation must be accompanied by damage of some tangible interest, such as loss of government employ-

ment, *id.* at 706, 96 S.Ct. at 1163, or loss of a right or status previously recognized by state law, *id.* at 711, 96 S.Ct. at 1165.

Cases in this circuit have reaffirmed *Paul*'s requirement of "reputation plus" for setting forth a claim of deprivation of liberty under the fourteenth amendment based on defamation.

In *Huntley v. Community School Board,* 543 F.2d 979 (2d Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977), the Second Circuit held that a public school principal's due process rights were violated when in the process of his termination, public remarks were made stigmatizing him and making it unlikely that he would find future employment in a similar capacity in the public schools or elsewhere.

In *Baden v. Koch,* 799 F.2d 825 (2d Cir. 1986), the court held that a Chief Medical Examiner's demotion to Deputy Chief Medical Examiner with accompanying damaging public announcements did not set forth a claim under section 1983 because the state actions did not result in his being foreclosed from a range of opportunities. *Baden* quotes from *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923), which states that fourteenth amendment liberty interests include the right "to engage in any of the common occupations of life." *Baden, supra,* 799 F.2d at 829. However, the court went on to discuss how the Supreme Court has "refined the parameters of liberty," citing such cases as *Paul v. Davis,* and *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (no property or liberty interest implicated when state fails to rehire non-tenured teacher absent charges against him amounting to stigma or foreclosing other employment). Moreover, the Second Circuit in *Baden* stated that Baden's interest was less significant than many asserted in Supreme Court cases in that Baden was not terminated and "not 'not rehired'" but was merely demoted. 799 F.2d at 830. Thus, since *Baden* was able to continue to work in his chosen profession, he did not suffer a deprivation of liberty.

Recently, in *Rudow v. City of New York,* 822 F.2d 324 (2d Cir.1987), the court held that an executive who suffered loss of job, poor health, and public humiliation based on charges of sexual harassment did not set forth a cause of action under section 1983 against the state's attorney. That attorney had prosecuted the action without discovering that the victim had fabricated evidence. The court held that Rudow had failed to satisfy the "reputation plus" test as he had not suffered the loss of public employment nor had he been prevented from practicing his profession. 822 F.2d at 330. The court held that "[h]is loss of the top job at his firm is an inadequate addendum to his reputation claim.... He has not been prevented from engaging in the everyday activities of life.... The collateral consequences of his being adjudged guilty of sexual harassment do not abridge a property right to his business reputation, as they might if that right were based on a statute." *Id.* (citations omitted); *see also Brandt v. Board of Cooperative Educational Services,* 820 F.2d 41 (2d Cir.1987) (upholding the complaint in case where state employee was dismissed and stigmatizing statements were placed in employment file).

■ These cases stand for the proposition that in order to make out a claim for loss of liberty without due process of law stemming from governmental defamation, the plaintiff must allege damage to reputation, plus deprivation of the ability to engage in the everyday activities of his life, apparently construed to mean his chosen occupation. Taking the allegations in the complaint to be true for the purposes of this motion, *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), Neu alleged such loss. His complaint states that because of the Defendants' defamatory statements, he was precluded from engaging in his chosen profession, namely, the auto repair contract business. Under *Huntley, Baden,* and *Rudow,* allegations of foreclosure from practicing one's chosen profession together with stigmatizing remarks constitute a cause of action under 42 U.S.C. § 1983.

### Federal Immunity

The Defendants next assert that even if Neu has stated a cause of action based on deprivation of liberty, they are entitled to immunity under federal law. The parties agree that the Supreme Court case of *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) is controlling on this question. The Court in that case held that public officials are entitled to qualified immunity unless the actions taken were clearly proscribed by law. Thus, the court stated:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the action in question has previously been held unlawful, ... but it is to say that in light of preexisting law the unlawfulness must be apparent.

*Id.*, 107 S.Ct. at 3039 (citations omitted).

■ The Defendants rely on *Paul v. Davis* to stand for the proposition that there is no preexisting law making it evident that the statements allegedly made by the Defendants violated Neu's constitutional rights. However, as set forth above, this circuit has held that an individual has a liberty interest in maintaining reputation plus the right to engage in his chosen profession. Both *Huntley* and *Baden* were decided before the Defendants made the allegedly defamatory statements. Therefore law forbidding such conduct was extant, and the Defendants can not avail themselves of qualified immunity.

### Pleading a State Cause of Action

■ Corcoran and Randolph have next moved to dismiss Neu's state cause of action on the ground that Neu has failed to plead the allegedly defamatory remarks in *haec verba*, as required by New York Civil Practice Law and Rules § 3016(a). However, as this action was commenced in federal court, the Federal Rules of Civil Procedure control the applicable pleading standards. Thus, "the mode of pleading defamation is governed by Rule 8, Fed.R. Civ.P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate." *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980).

### Immunity under State Law

#### Official Immunity

The Defendants next contend that as state officials, they are absolutely immune from suit for defamation stemming from statements made "in connection with" their official duties. However, the standard applied by the New York Court of Appeals is somewhat stricter. That court has stated that an official is

> absolutely immune from liability for allegedly defamatory remarks related to his responsibilities *and made during the course of the performance of his duties.*

> This does not mean, however, that absolute immunity attaches to every statement made by a[n official]. Both the subject of the statement and the circumstances in which it is made are of importance in determining whether a particular statement was privileged.

*Clark v. McGee*, 49 N.Y.2d 613, 404 N.E.2d 1283, 1287, 427 N.Y.S.2d 740, 744 (1980) (emphasis added).

■ In this case, the Defendants allegedly made the offending statements not in the course of their duties as Commissioner and Deputy Commissioner for the State of New York, but at a convention of other insurance commissioners. The complaint sets forth that the statements were made to discrete attendants at the convention and not in the discharge of duties by, for example, warning all commissioners of the alleged wrongful deeds of individuals who could potentially practice in any of the fifty states. That is, the complaint seemingly indicates that the statements were made in social conversation. This does not satisfy the requirements of *Clark*.

Moreover, some of the statements allegedly made by Randolph were that Neu was a swindler, operated a scam in New York, and associated with criminals. These are

not necessarily relevant to the auto repair business or the insurance business, the Defendants' field of regulation, and thus would not fall under the privilege as enumerated by *Clark. See also Cosme v. Town of Islip,* 102 A.D.2d 717, 476 N.Y.D. 2d 857 (1st Dep't.), *aff'd,* 63 N.Y.2d 908, 472 N.E.2d 1033, 483 N.Y.S.2d 205 (1984).

In sum, the Defendants have not set forth a claim of privilege sufficient to overcome the allegations set forth in the complaint. As this court must take those allegations to be true for the purposes of this motion, the motion to dismiss on these grounds is denied.

*Immunity in Reporting Judicial Decisions*

Finally, the Defendants claim immunity for suit for defamation under New York Civil Rights Law § 74. That section provides:

A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or any heading of the report which is a fair and true headnote of the statement published.

This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

The seminal case on the exception to this privilege is *Williams v. Williams,* 23 N.Y. 2d 592, 246 N.E.2d 333, 298 N.Y.S.2d 473 (1969), a case where a plaintiff had instituted a judicial proceeding alleging false and defamatory charges and then made communications based on the proceeding. *See Branca v. Mayesh,* 63 N.Y.2d 994, 473 N.E. 2d 261, 483 N.Y.S.2d 1011 (1984). In *Williams,* the New York Court of Appeals examined the legislative history behind section 74, noting that the original statute came about to protect public reporting of judicial proceedings, such as in newspapers and publications. It determined that

The purpose of section 74 of the Civil Rights Law ... is the protection of reports of judicial proceedings which are made in the public interest.... It would be contrary to reason to say that the Legislature considered it necessary to protect such defamation in order to implement the salutary aims of the statute.

246 N.E.2d at 339, 298 N.Y.S.2d at 479.

The statements alleged here do not fall under this statute. They were not, as set forth in the complaint, remarks made for the benefit of the general public, but remarks made for a few select ears. They were not, in truth, reports of judicial proceedings. They were, as pleaded, personal comments about the plaintiff. The complaint does not allege that the Defendants said "the court said X or held X about Neu." The complaint alleges that the Defendants said, for example, that Neu is a swindler and that Neu does not perform his duties. This does not constitute reporting on judicial proceedings. Thus, the Defendants cannot avail themselves of the protection of this section against the complaint.

*Conclusion*

For the reasons set forth above, Defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. is denied.

It is so ordered.