Nicholas NEU, Plaintiff–Appellee,

v.

James P. CORCORAN, Individually and as Superintendent of Insurance of the State of New York, and James W. Randolph, Individually and as Deputy Superintendent of Insurance of the State of New York, Defendants–Appellants.

No. 725, Docket 88–7914.

United States Court of Appeals, Second Circuit.

Argued Jan. 25, 1989.

Decided March 3, 1989.

August L. Fietkau, Asst. Atty. Gen., (Robert Abrams, Atty. Gen., Lawrence S. Kahn, Deputy Sol. Gen., Frederic L. Lieberman, Asst. Atty. Gen., New York City, on the brief), for defendants-appellants.

Andrew J. Goodman, (Rosner & Goodman, New York City, on the brief), for plaintiff-appellee.

Before NEWMAN, PIERCE, and MAHONEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

The principal issue on this appeal is whether qualified immunity shields a state official who defames a private citizen and thereby damages his career opportunities but without depriving the citizen of any legal right or status created by state law. The issue arises on an appeal by James P. Corcoran and James W. Randolph from an order of the District Court for the Southern District of New York (Robert W. Sweet, Judge) denying their motion to dismiss a

due process claim brought by Nicholas Neu. *Neu v. Corcoran*, 695 F.Supp. 1552 (S.D.N.Y.1988). We conclude that appellants are entitled to immunity because our prior cases have not clearly established that appellants' conduct deprived appellee Neu of a liberty interest protected by the due process guarantees of the Fourteenth Amendment. We therefore reverse and remand.

## Background

From February 1985 through March 11, 1987, plaintiff appellee Neu was president of American Motor Club, Inc. ("AMC"), a New York corporation engaged in selling prepaid automobile collision contracts to motorists in New York. The New York State Insurance Department filed charges against AMC in 1985, alleging that the company was engaged in the selling of insurance without a license. The Supreme Court of the State of New York upheld the charges in January 1987 and enjoined AMC from continuing its activities in the state. The Court also imposed monetary sanctions on Neu personally. In October 1987, New York's Appellate Division, First Department, affirmed the ruling that AMC was engaged in the unauthorized sale of insurance but reversed the fines against Neu. *People v. American Motor Club, Inc.*, 133 A.D.2d 593, 520 N.Y.S.2d 383 (1st Dep't 1987).

In March 1987, after the state Supreme Court's ruling, Neu began operating similar prepaid collision service companies in California. Neu's complaint in the pending litigation alleges that in June 1987 Corcoran, New York's superintendent of insurance, and Randolph, deputy superintendent, made defamatory remarks about Neu at a convention of insurance commissioners in Chicago. Neu alleges that the New York officials falsely told other commissioners, including California's, that Neu did not honor his contracts, did not repair vehicles, was responsible for driving AMC into bankruptcy, knowingly violated the law, was a swindler, operated a scam in New York, and associated with criminals. Neu further alleges that as a result of those statements, his reputation was ruined

and he was forced out of the automobile repair business, which was his sole livelihood. In particular, he alleges that the California Department of Insurance threatened to bring disciplinary action against insurance companies and brokers that engaged in business transactions with Neu's companies and that he was forced to resign from his California companies.

Neu's suit against Corcoran and Randolph was brought in the District Court for the Southern District of New York, pursuant to 42 U.S.C. § 1983 (1982). He alleged that the state officials, without due process, deprived him of a liberty interest by defaming him and casting a stigma on him that foreclosed a range of career opportunities and deprived him of the ability to engage in his occupation. He also brought a pendent state law claim for defamation.

Corcoran and Randolph moved, pursuant to Fed.R.Civ.P. 12(b)(6), to dismiss Neu's claim for failure to state a claim upon which relief may be granted and on the basis of official immunity under federal and state law. The District Court issued an order denying the motion. Corcoran and Randolph appeal from the order to the extent that it denied their official immunity defense to the federal claim.

## Discussion

1. *Appellate Jurisdiction.* Although the denial of a motion to dismiss is ordinarily not an appealable "final decision" within the meaning of 28 U.S.C. § 1291 (1982), the "collateral order" doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), has been construed to permit interlocutory appeals from denials of substantial claims of qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985). The entitlement to qualified immunity is an immunity from suit, rather than a mere defense to liability; therefore, it is effectively lost if a case is erroneously permitted to go to trial. *Id.* at 526, 105 S.Ct. at 2815. An order denying a defense of qualified immunity is immediately ap-

pealable, however, only where it can be decided as a matter of law and does not turn on disputed questions of fact. *Id.* at 530, 105 S.Ct. at 2817; *Lawson v. Abrams,* 863 F.2d 260, 262 (2d Cir.1988); *White v. Frank,* 855 F.2d 956, 958 (2d Cir.1988).

Neu contends that Corcoran's and Randolph's qualified immunity defense turns on disputed questions of fact and that the case is therefore not ripe for review under the collateral order doctrine. Specifically, he contends that whether appellants' alleged statements actually resulted in foreclosing Neu from engaging in his chosen occupation is a factual question requiring further inquiry in the District Court. We disagree. We think that the validity of appellants' qualified immunity defense to Neu's claims can be decided as a matter of law, accepting Neu's factual allegations as true for purposes of the appeal. We therefore have jurisdiction to review the immunity ruling.

2. *Qualified Immunity.* Government officials performing discretionary functions are not absolutely immune from liability for civil damages, but they are protected by qualified, or good-faith, immunity. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity shields officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818, 102 S.Ct. at 2738. An official is liable only if the contours of the right he is alleged to have violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). The very action in question need not previously have been held unlawful, but the unlawfulness must be apparent in light of preexisting law. *Id.*

Neu alleges that appellants, acting under color of state law, deprived him of a liberty interest without due process by making defamatory statements that led to foreclosure of his ability to engage in his chosen occupation, the auto repair contract business. The District Court concluded that this adequately stated a claim for relief under section 1983. *Neu v. Corcoran,* 695 F.Supp. at 1555. The District Judge also found that the right to due process under such circumstances had been clearly established by decisions of this Circuit. *Id.* at 1556. The Court cited two cases for this proposition, *Huntley v. Community School Board,* 543 F.2d 979 (2d Cir.1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 773 (1977), and *Baden v. Koch,* 799 F.2d 825 (2d Cir.1986), both of which were decided before the alleged defamation took place.

Whether or not the District Court is correct that Neu adequately alleged deprivation of a liberty interest to state a claim for relief under 42 U.S.C. § 1983, a matter we do not decide, we do not agree that *Huntley, Baden,* or any of our other decisions clearly established in 1987 that appellants' alleged actions constituted a deprivation of a protected liberty interest. Unlike the case at bar, *Huntley* and *Baden* both involved defamation of *government employees* who were allegedly defamed *in the course of being dismissed or demoted.* To explain why this distinction is significant, we must survey cases in the Supreme Court and in this Circuit explicating the constitutional standards concerning defamation by government officials.

In *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court considered the constitutionality of a state statute that provided for the posting in liquor stores of a list of persons who tended to become violent after excessive drinking and who were forbidden from purchasing alcohol for one year. The statute did not provide the persons listed with notice or opportunity for a hearing. The Court, finding that the State had attached a "badge of infamy" to the plaintiff, concluded that due process protections were required. *Id.* at 437, 91 S.Ct. at 510. The Court stated that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.*

The Court again considered the issue of what constitutes a constitutional deprivation the following year in *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), a case involving a non-tenured teacher at a state university who was not rehired after his one-year contract expired. *Roth* held that the teacher had no property interest in his job because state law did not guarantee him a right to renew his contract.

In discussing whether the plaintiff in *Roth* had been deprived of a liberty interest, the Court noted that liberty, as protected by the Fourteenth Amendment, included a number of rights, including the right " 'to engage in any of the *common occupations of life.*' " *Id.* at 572, 92 S.Ct. at 2706 (quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923)). The Court said there might be cases "in which a State *refused to reemploy a person* under such circumstances that interests in liberty would be implicated" but that *Roth* was not such a case. *Id.* at 573, 92 S.Ct. at 2707 (emphasis added). The Court also said there was no suggestion that the State, *"in declining to reemploy the respondent,* imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." *Id.* (emphasis added).

The Court revisited the issue of governmental defamation in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul,* a local police chief circulated flyers to area retail stores with "mug shots" of persons deemed to be "active shoplifters." The plaintiff, who had been arrested for shoplifting but not yet tried, contended that the flyers defamed him and that, under *Wisconsin v. Constantineau,* he was entitled to due process. He alleged that as a consequence of the posters, he had received a warning from his employer, although he had not been fired. The Court found that the plaintiff had not been deprived of either a property or liberty interest that would trigger due process protections.

The Court in *Paul* expressed the concern that the Fourteenth Amendment not be interpreted so broadly as to turn every state-law tort committed by a state official into a constitutional violation. *Id.* at 699, 96 S.Ct. at 1159. The Court said that its prior cases dealing with "stigma" resulting from defamation by government officials did "not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." *Id.* at 701, 96 S.Ct. at 1160.

The Court noted that *Constantineau* had said that due process rights were triggered " '[w]here a person's good name, reputation, honor, or integrity is at stake *because of what the government is doing to him.* ' " *Id.* at 708, 96 S.Ct. at 1164 (quoting *Wisconsin v. Constantineau, supra,* 400 U.S. at 437, 91 S.Ct. at 510) (emphasis added by *Paul* ). The Court said the italicized phrase "referred to the fact that the governmental action taken in that case *deprived the individual of a right previously held under state law"*—the right to purchase or obtain liquor. *Id.* (emphasis added). Similarly, the Court said that "[w]hile *Roth* recognized that governmental action defaming an individual *in the course of declining to rehire him* could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a government official but *unconnected with any refusal to rehire* would be actionable under the Fourteenth Amendment." *Id.* at 709, 96 S.Ct. at 1164 (emphasis added). The Court quoted two other passages from *Roth,* twice italicizing for emphasis the phrase *"in declining to rehire/reemploy the respondent." Id.*

The plaintiff's interest in his reputation, *Paul* said, "is simply one of a number [of interests] which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." *Id.* at 712, 96 S.Ct. at 1166. Since the defendant state official, although defaming the plaintiff, had not deprived him of any right or status previously recognized by

state law, the injury did not rise to the level of a constitutional deprivation. *Id.*[1]

Although *Paul* is the foundation for all subsequent cases dealing with governmental defamation, its meaning is not unambiguous. *See, e.g.,* 2 R. Rotunda, J. Nowak & J. Young, *Treatise on Constitutional Law* § 17.4, at 230 (1986) ("One of the most disputed aspects of liberty in recent years is the degree to which the due process clauses protect the interest of an individual in his reputation."). *Paul* has been widely interpreted as holding that "stigma plus" is required to establish a constitutional deprivation, *see, e.g., Moore v. Otero,* 557 F.2d 435, 437 (5th Cir.1977), but it is not entirely clear what the "plus" is.

On the one hand, *Paul* suggested that reputation, together with "some more tangible interests such as employment," could constitute a liberty interest. 424 U.S. at 701, 96 S.Ct. at 1160. It did not say that "employment" had to be *government* employment. Thus, *Paul* might plausibly be interpreted as holding that any governmental defamation that causes a person to lose his job and impairs his ability to pursue his chosen profession or occupation is enough to constitute a deprivation of liberty, even if it does not occur in the course of dismissal from government employment or alteration of some other right or status recognized by state law. The "plus," in other words, might simply be that a consequence of the defamation was deprivation of the right, recognized in *Meyer v. Nebraska, supra,* "to engage in any of the common occupations of life."

On the other hand, *Paul* stressed that defamation alone did not constitute deprivation of a protected liberty interest, absent impairment of a right or status previously recognized by state law. The Court, commenting on *Roth*'s discussion of reputation as a liberty interest, emphasized the fact that *Roth* had been discussing defamation by a state official *in the course of declining to rehire* the plaintiff as a state employee—state employment being a right

or status recognized by state law. *Id.* at 709, 96 S.Ct. at 1164. *Paul* thus strongly suggests that defamation, even if it leads to a significant loss of employment opportunities, is not a deprivation of a liberty interest unless it occurs in the course of dismissal or refusal to rehire the individual as a government employee or during termination or alteration of some other legal right or status. Otherwise, *Paul* suggests, defamation is merely a tort, cognizable at state law, but not a constitutional deprivation. Under this interpretation, the "plus" is not only significant damage to a person's employment opportunities but dismissal from a government job or deprivation of some other legal right or status.

Contrary to the District Court, we do not think our cases have clarified this ambiguity left by *Paul* nor have they clearly established that defamation occurring other than in the course of dismissal from a government job or termination of some other legal right of status will suffice to constitute a deprivation of a liberty interest.

In *Gentile v. Wallen,* 562 F.2d 193 (2d Cir.1977), a discharged public school teacher alleged that the school board had made defamatory statements about her to the state unemployment office. We noted that the alleged communication occurred *after* plaintiff had been terminated "and hence, *in the absence of an employment relationship,* amounted to at most the type of simple defamation that the Supreme Court held not to trigger due process rights in *Paul v. Davis.*" *Id.* at 198 (emphasis added). The plaintiff in *Gentile* did not allege, however, that the defamation had precluded her from working elsewhere as a teacher; we therefore did not have occasion to determine whether that sort of damage would have rendered the defamation actionable as a deprivation of a liberty interest.

*Huntley v. Community School Board, supra,* involved a public school principal who alleged that he had been defamed in the course of his dismissal. We held that the plaintiff in *Huntley* was entitled to due

---

1. For a critique of the retrenchment in the scope of a protected liberty interest from *Wisconsin v. Constantineau* to *Paul v. Davis, see* L. Tribe, *American Constitutional Law* § 10–11 (1988).

process protections because his situation was the one contemplated hypothetically in *Roth:* " ' "the State, *in declining to re-employ the respondent,* imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities." ' " *Id.* at 986 (quoting *Paul v. Davis, supra,* 424 U.S. at 709, 96 S.Ct. at 1164 (quoting *Board of Regents v. Roth, supra,* 408 U.S. at 573, 92 S.Ct. at 2707)) (emphasis added).

Like *Huntley, Brandt v. Board of Cooperative Educational Services,* 820 F.2d 41 (2d Cir.1987), also involved allegations of defamation of a public school teacher who had been discharged and who alleged that the defamation imposed a stigma on him that precluded him from finding other employment. We ruled that in contrast to *Gentile v. Wallen, supra,* the defamatory statements were made *at the time of the plaintiff's termination,* 820 F.2d at 45, and that he had therefore sufficiently alleged deprivation of a liberty interest.

*Baden v. Koch, supra,* also involved a due process claim by a government employee. In *Baden,* the plaintiff alleged that he had been defamed in the course of being demoted from a probationary position as New York City's chief medical examiner back to his position as deputy medical examiner. We ruled that the plaintiff "asserted at best a weak liberty interest." *Id.* at 831. We did not suggest that the plaintiff's liberty interests would have been implicated if he had been defamed outside the context of dismissal or demotion from his government job.

The only two cases of this Court that might arguably support Neu's position are *Rudow v. City of New York,* 822 F.2d 324 (2d Cir.1987), and *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438 (2d Cir.1980).

*Rudow* involved alleged defamation of a private citizen—not a government employee—by a city official. The plaintiff lost his job as a result of the alleged defamation, but he did not allege that he was foreclosed from finding other jobs in his field. We held that the plaintiff "competently alleged damage to his reputation, but has not offered a supplementary injury sufficient to meet the 'reputation-plus' standard of *Paul v. Davis." Id.* at 330.

In making that ruling, however, we noted that the plaintiff had not suffered a loss of public employment, *"nor has he been prevented from practicing his profession." Id.* (emphasis added). As Neu contends, the italicized phrase arguably suggests that the plaintiff would have had a sufficient claim if he had alleged that the stigma foreclosed him from practicing his profession, even though the defamation was not connected to any loss of government employment or legal status. But we decline to read this dictum from *Rudow* that broadly. The italicized phrase is followed by a citation to *Baden,* which was a public employee case. We do not think the panel in *Rudow* meant to extend the doctrine elaborated in *Baden.*

In *Quinn,* the plaintiff was an official of a not-for-profit corporation created to carry out urban redevelopment in Syracuse. He alleged that the Mayor of Syracuse deprived him of a liberty interest without due process by defaming him and mounting a campaign to have him fired. We ruled that the plaintiff's allegations were sufficient to survive summary judgment, observing that "an individual's liberty can be implicated when a governmentally imposed stigma restricts his ability to seek and obtain employment." *Quinn v. Syracuse Model Neighborhood Corp., supra,* 613 F.2d at 446. We also noted that it was clear that the alleged defamation had occurred in the course of the termination of employment, *id.* at 446, but we did not focus on the issue of whether it was in the course of termination of *public* employment. The plaintiff's job may have been considered at least quasi-governmental, since his original appointment had come at the behest of the Mayor, *id.* at 442, and the employing corporation had received the vast majority of its funding from the federal government, allocated through the City of Syracuse. *Id.* at 442 n. 1. Indeed, the District Court had assumed, for purposes of summary judgment, that the corporation's actions constituted "state action" under the Fourteenth

Amendment. *Id.* In any event, the circumstances of *Quinn* are sufficiently unclear that we do not think it squarely establishes that governmental defamation, outside the context of discharge from governmental employment or similar termination of a legal right or status, can constitute a deprivation of a liberty interest.

This Court's recent opinion in *Walentas v. Lipper*, 862 F.2d 414 (2d Cir.1988), bolsters our reading of *Rudow* and *Quinn.* In *Walentas*, the plaintiff was a real estate developer who had received preliminary approval by New York City to develop a stretch of waterfront land. He alleged that a city official defamed him in the course of withdrawing his designation as a developer. The city official asserted qualified immunity, and we upheld that defense. We held that it was not clearly established in 1984 (the time of the alleged defamation) that governmental defamation of a person *seeking* state employment (but not yet having obtained it) is a deprivation of a liberty interest for Fourteenth Amendment purposes, even if the defamation impairs the person's chances for other employment.

In light of these decisions, we do not think that the law of this Circuit clearly establishes that the governmental defamation alleged by Neu rises to the level of a constitutional violation, rather than simply a state law tort.[2] Neu alleges that the New York officials made false statements about him that caused other states to take action against him. But the alleged defamation of Neu did not occur in the course of dismissal from a government job, nor did it come in the course of termination by New York of any other legal right or status enjoyed by Neu.[3] It would not be clear

---

**2.** Nor do cases from other circuits support Neu's claim. *See, e.g., Goulding v. Feinglass,* 811 F.2d 1099, 1103 (7th Cir.) ("[A] liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers. There is no legal barrier to [plaintiff's] pursuing his practice of law.") (quotation omitted), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3215, 96 L.Ed.2d 701 (1987); *Naegele Outdoor Advertising Co. v. Moulton,* 773 F.2d 692, 702 (6th Cir.1985) ("[*Paul v.*] *Davis* holds that defamation alone will not suffice, but must accompany the alteration of a recognized interest or status created by the state"), *cert. denied,* 475 U.S. 1121, 106 S.Ct. 1639, 90 L.Ed.2d 184 (1986); *Hadley v. County of Du Page,* 715 F.2d 1238, 1246 (7th Cir.1983) ("The key [to the 'stigma-plus' test] ... is that the defamation must 'occur in the course of the termination of employment.'") (quoting *Paul v. Davis, supra,* 424 U.S. at 710, 96 S.Ct. at 1165), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *Ray v. Tennessee Valley Authority,* 677 F.2d 818, 824 (11th Cir.1982) (rejecting discharged public employee's due process claim where the alleged defamation "did not 'occur in connection with' the asserted deprivation of employment"), *cert. denied,* 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983); *Havas v. Thornton,* 609 F.2d 372 (9th Cir.1979) (holding that governmental defamation unconnected with any refusal to rehire, or to alteration or termination of a right or status previously recognized by state, is not a constitutional violation); *Rodriguez de Quinonez v. Perez,* 596 F.2d 486, 489 (1st Cir.) ("While defamation by a governmental official, standing alone, does not work a deprivation of liberty protected by the fourteenth amendment, governmental action altering a right or status previously held under state law combined with the injury resulting from the defamation justifie[s] the invocation of procedural safeguards.") (citation and quotation omitted), *cert. denied,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *Bundy v. Rudd,* 581 F.2d 1126, 1131 (5th Cir.1978) ("To establish a liberty interest sufficient to implicate Fourteenth Amendment safeguards, the individual must be not only stigmatized but also stigmatized in connection with a denial of a right or status previously recognized under state law.") (quoting *Dennis v. S & S Consolidated Rural High School District,* 577 F.2d 338, 341 (5th Cir.1978)), *cert. denied,* 441 U.S. 905, 99 S.Ct. 1992, 60 L.Ed.2d 373 (1979).

One case that may support Neu's position is *Little v. City of North Miami,* 805 F.2d 962 (11th Cir.1986). *Little* involved a law professor at a state university who was publicly censured by the City Council. The Eleventh Circuit said that the law professor's allegation that the Council's defamation damaged his business reputation met the "stigma plus" requirement of *Paul v. Davis, supra. Id.* at 968–69. *Gardiner v. A.H. Robins Co.,* 747 F.2d 1180 (8th Cir.1984), also supports Neu's position, but it relies on questionable authority. *Gardiner* stated that a judge's comments from the bench concerning the conduct of officers of a corporate party "constituted an infringement on the officers' liberty interests because it was a governmental attack on their good name, reputation, honor, and community standing." *Id.* at 1191. *Gardiner* supports this proposition by citing *Wisconsin v. Constantineau,* but fails to reckon with the Supreme Court's reinterpretation of *Constantineau* in *Paul v. Davis.*

**3.** Neu was not licensed to sell insurance in New York and New York did not revoke such a license. Rather, New York prosecuted him for

to a reasonable government official that the defamation Neu has alleged is a deprivation of a protected liberty interest that triggers due process requirements. We therefore conclude that Corcoran and Randolph are entitled to immunity with respect to Neu's federal claim. Since the federal claim encounters an insurmountable threshold obstacle, it would be inappropriate to exercise pendent jurisdiction over the state law claim.

We therefore reverse the order of the District Court and remand with directions to dismiss the complaint.

selling insurance without having such a license. Neu had no legally protected status entitling him to pursue his occupation in disregard of state law.