M. Matthew LAHAZA and
Yolanda M. Lahaza

v.

Gerald J. AZEFF, et al.

Civ. A. No. 91–7896.

United States District Court,
E.D. Pennsylvania.

March 31, 1992.

James M. McNamara, McNamara, Heckler & Bolla, Doylestown, Pa., for plaintiffs.

Joseph M. Oberlies and Michael J. Boccella, Connor and Weber, Philadelphia, Pa., for Gerald J. Azeff and Code Inspections, Inc.

Jane M. Shields, Siana & Shields, Exton, Pa., for Mary K. Smithson and Newtown Tp.

Calvin R. Koons, Office of Atty. Gen., Litigation Section, Harrisburg, Pa., for Norman McGinnis.

## MEMORANDUM

BARTLE, District Judge.

This is a civil rights action brought under 42 U.S.C. § 1983.[1] Plaintiffs M. Matthew Lahaza and Yolanda M. Lahaza ("Plaintiffs"), who are husband and wife, seek to recover damages from defendants Gerald J. Azeff ("Azeff"), Code Inspections, Inc. ("CII"), Mary K. Smithson ("Smithson"), Newtown Township, and Norman McGinnis ("McGinnis").

Defendants have all filed motions to dismiss Plaintiffs' Complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6), courts must accept as true all allegations in the complaint, and all reasonable inferences which can be deducted therefrom. *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir.1989).

Plaintiff M. Matthew Lahaza ("Lahaza") was, during the relevant time period, employed by Newtown Township in Bucks County, as Code Enforcement Officer, responsible for enforcing the Township's Zoning Code and other codes and ordinances. In 1989 an election for the Township Board of Supervisors was scheduled. Lahaza decided to run for the seat on the Board of Supervisors held by defendant Smithson. Since Smithson, who was running for re-election, and Lahaza were of the same political party, they were required to run against each other in the primary election held in May, 1989.

On March 6, 1989, Lahaza filed a Statement of Financial Interest with Newtown Township and the County Board of Elections, indicating his intention to run for a seat on the Board of Supervisors of Newtown Township. Under Pennsylvania law, a Statement of Financial Interest is required of all candidates for public office. The Township Manager, who reviewed Lahaza's Statement of Financial Interest, believed that there were some real estate matters in which Lahaza was involved which could be construed as being in a direct conflict of interest with Lahaza's job responsibilities as Code Enforcement Officer.[2] When the Township Manager called

---

1. 42 U.S.C. § 1983 states in pertinent part:
   Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   Plaintiffs also seek attorney's fees provided for in 42 U.S.C. § 1988:

   In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ... the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

2. Among other things, in his Statement of Financial Interest, Lahaza had identified a real estate interest in property which had been the subject of a subdivision application in Newtown Township.

these real estate matters to the attention of the Board of Supervisors, the Board decided to investigate.

On March 7, 1989, the Board of Supervisors called a meeting with Lahaza in order to give him an opportunity to address the questions raised by the Township Manager's review of Lahaza's Statement of Financial Interest. Although Lahaza denied any allegations of wrongdoing, he refused to provide written documents requested by the Board, "believing that the request was politically motivated and made in bad faith in order to seek to embarrass him as part of the campaign to re-elect Mary K. Smithson as Supervisor...." Complaint ¶ 27.

On March 13, 1989, the Board of Supervisors, which still included Smithson as a member, voted to suspend Lahaza from his position of Code Enforcement Officer for a period of two weeks, while the investigation into the potential conflict of interest continued. On March 20, 1989, before completion of the investigation, Lahaza resigned his position as Code Enforcement Officer. Lahaza made the decision to resign "... believing that his position as a candidate for the Board of Supervisors in Newtown Township would be unfairly compromised by the continuing investigation and his employment by a Board partly controlled by his opponent [Smithson]...." Complaint ¶ 31.

Lahaza alleges that sometime prior to March 30, 1989, defendants Azeff, Smithson, and McGinnis met to share information and invent allegations against Lahaza and his wife. Azeff and his company, CII, were involved in the building inspection business,[3] and McGinnis, a good friend of Azeff, was employed as a criminal investigator for the Pennsylvania Attorney General's Office.[4]

As a result of that meeting, Lahaza alleges that on March 30, 1989, an anonymous two-page letter containing, among other things, allegations of criminal improprieties against both Lahaza and his wife, was sent to the offices of Newtown Township. A similar letter was sent anonymously to McGinnis. Plaintiffs allege that these letters were written by defendant Azeff, and were the product of the meeting attended by Azeff, Smithson and McGinnis. As a result of the letters,[5] the Pennsylvania Attorney General began an investigation of the Plaintiffs on charges of public corruption.[6]

Defendant Smithson defeated Lahaza in the Republican primary election, held in May, 1989. Lahaza alleges that the publicity generated as a result of the action taken by the Board of Supervisors, and the subsequent investigation by the office of the Pennsylvania Attorney General, was a contributing factor in his election defeat.

In November, 1989, the Office of Attorney General concluded that there was no basis for the filing of criminal charges against either of the Plaintiffs, and announced that the investigation was being closed.

---

**3.** Defendant Azeff was an officer and director of defendant CII, a company in the business of performing building, electrical, code, and other inspections for builders or municipalities. During the time in question, Newtown Township employed Building Inspections Underwriters, Inc. ("BIU"), a business competitor of CII, for the purposes of conducting building and other code inspections in the Township. Plaintiffs allege that defendants Azeff and CII participated in the alleged conspiracy in order to acquire the Township inspection business from BIU. Plaintiffs further allege that defendant McGinnis participated in the alleged conspiracy because he was a friend of Azeff.

**4.** Plaintiffs allege that McGinnis became involved in the alleged conspiracy because he wanted to help his good friend, defendant Azeff.

**5.** Plaintiffs allege that McGinnis forwarded the anonymous letter which he received to the Pennsylvania Attorney General, along with "a police report prepared by ... McGinnis which purported to be a supporting document describing a telephone contact allegedly made anonymously to Agent McGinnis." Complaint ¶ 34.

**6.** In addition to the allegations against Lahaza, there were also allegations that Yolanda Lahaza profited from her husband's position as Code Enforcement Officer. She allegedly benefitted from the sale of telephone equipment to a developer doing business with Newtown Township. Plaintiffs denied this allegation, stating that Yolanda Lahaza had never been employed in any job connected with the sale of telephone equipment.

Plaintiffs allege that the actions of the defendants violated Plaintiffs' rights to due process under the Fourteenth Amendment,[7] as well as their rights under the Sixth Amendment,[8] as incorporated into the Fourteenth Amendment. In order to claim an entitlement to the protection of the due process clause of the Fourteenth Amendment, Plaintiffs must establish that defendants deprived them of a constitutionally protected "liberty" or "property" interest, without due process. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Clark v. Township of Falls*, 890 F.2d 611, 617 (3d Cir.1989). Plaintiffs claim a loss of a property interest because of Lahaza's loss of his present employment as Code Enforcement Officer of Newtown Township, and of his prospects for future employment. Apparently, Lahaza was not employed in his chosen field for almost two years following his resignation from his position in Newtown Township. According to Plaintiffs, these losses resulted from the defendants' conspiring to initiate a criminal investigation, and from the criminal investigation that took place. Plaintiffs also claim that the criminal investigation caused Lahaza's loss in the primary election,[9] although they do not state whether the loss is a deprivation of a liberty or a property interest. Plaintiffs further allege a loss of a liberty interest in their reputation, as a result of defendants' misconduct.

Property interests are created and defined by state law. *Board of Regents* at 577, 92 S.Ct. at 2709; *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir.1989). We need not decide whether, under Pennsylvania law, Lahaza had a property interest in his employment with Newtown Township. *See, Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1341–44 (3d Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1597, 113 L.Ed.2d 660 (1991). Plaintiffs' Complaint contains no allegations, which, if proven, would support a finding that Lahaza's loss of employment deprived him of a constitutionally guaranteed right to due process. In his Complaint, Lahaza concedes that his decision to resign was a well reasoned strategy made to further the goals of his political campaign. Lahaza's loss of employment resulted from his own voluntary resignation. There is no claim in the Complaint that the resignation was involuntary.

In cases involving the alleged loss of employment without due process of law, federal courts presume that a resignation is voluntary unless the former employee can establish that it was involuntary. *Stone v. University of Maryland*, 855 F.2d 167, 173–175 (4th Cir.1988); *Alvarado v. Picur*, 859 F.2d 448, 453 (7th Cir.1988); *Christie v. United States*, 518 F.2d 584, 587–589, 207 Ct.Cl. 333 (1975). In *Stone*, for example, the former employee was a physician who claimed the circumstances under which he resigned rendered his resignation involuntary. The physician, accused of malpractice, had been given a choice by his employers between resignation or revocation of his clinical privileges. The second choice would most probably have ruined the doctor's career. In addition, he was given only a short time in which to make his decision. Weighing the circumstances, the doctor chose to resign. The Court of Appeals for the Fourth Circuit found that the doctor's resignation was voluntary, "neither induced by misrepresentation nor coerced by the [employer]" and that the doctor was therefore not de-

**7.** The Due Process Clause of the Fourteenth Amendment states:
... nor shall any State deprive any person of life, liberty, or property, without due process of law; ...

**8.** The Sixth Amendment states:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defence.

**9.** Plaintiffs allege in their Complaint that Smithson participated in the alleged conspiracy in order to discredit Lahaza, thereby ruining Lahaza's chances of winning the primary election.

prived of a protected property interest. *Stone* at 175.

In the case before us, there are no allegations that Lahaza was given an alternative between resigning and being fired, or that he was coerced in any way by his employers in order to obtain his resignation. The mere fact that Lahaza believed that his continued employment in that job could harm his political candidacy is clearly insufficient to show involuntary resignation.

> If he resigned of his own free will even though prompted to do so by events set in motion by his employer, he relinquished his property interest voluntarily and thus cannot establish that the state 'deprived' him of it within the meaning of the due process clause.

*Stone* at 173.

■ Plaintiffs have also alleged that the conspiracy to initiate a criminal investigation caused plaintiff Lahaza to be deprived of an opportunity to win the primary election for the Newtown Township Board of Supervisors. In the present case, Plaintiffs' Complaint contains no allegations that Lahaza was prevented from running in the primary election by the actions of the defendants. Rather, Plaintiffs merely allege that "the unfavorable publicity generated to a large extent by Defendants was a contributing factor in his defeat in the Republican primary for the position of Township Supervisor...." Complaint ¶ 58. Even if true, there is no federally protected right to win election to public office. *Flinn v. Gordon*, 775 F.2d 1551 (11th Cir. 1985), *cert. denied* 476 U.S. 1116, 106 S.Ct. 1972, 90 L.Ed.2d 656 (1986).

In *Flinn*, a former state representative brought an action under 42 U.S.C. § 1983 against two former aids, another legislative employee, the candidate who defeated him and the person who was then Chairperson of the House Administration Committee. Plaintiff, Flinn, alleged that defendants, conspiring together, had released slanderous accusations of sexual misconduct by him. These accusations were released to the media while Flinn was campaigning for re-election, allegedly damaging Flinn's reputation and causing him to lose his attempted re-election. The Court of Appeals for the Eleventh Circuit dismissed the complaint, holding that while Flinn had a constitutional right to run for office and to hold office once elected, he had no constitutional right to win an election. The Eleventh Circuit made a "fundamental" distinction between expulsion or removal of a public official by the state and the same activity by the voters. *Flinn* at 1554.

■ Plaintiffs have also alleged a violation of a liberty interest in their reputations. The Supreme Court in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), *reh. denied* 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811 (1976), held that a person's interest in reputation alone is not a "liberty" guaranteed against state deprivation without due process of law. *Paul* at 712, 96 S.Ct. at 1166. The plaintiff in *Paul* had been arrested on a shoplifting charge. The Police Chief had circulated a flyer in the area containing the photos and names of area shoplifters, and the plaintiff's name was on the photo. After the flyer was circulated, all shoplifting charges against the plaintiff were dropped. Plaintiff filed a complaint under 42 U.S.C. § 1983 against the Chief of Police alleging defamation. The Supreme Court declared:

> Respondent in this case cannot assert denial of any right vouchsafed to him by the State and thereby protected under the Fourteenth Amendment. That being the case, petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.

*Paul* at 712, 96 S.Ct. at 1166. Similarly, the Court of Appeals stated in *Clark v. Township of Falls*, 890 F.2d 611 (3d Cir. 1989):

> [A] liberty interest in ... reputation ... must surmount the formidable barrier imposed by *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In that case, the United States Supreme Court held that reputation alone is not an interest protected by the Due Process

Clause. The Court announced that defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution. *Id.* at 701–12, 96 S.Ct. at 1160–65. (Footnote omitted).

*Clark* at 619.

Plaintiffs do not have a right or status guaranteed by state law or the Constitution which has been extinguished as a result of any alleged harm to their reputations. The fact that Lahaza was unable to obtain employment in his chosen field for almost two years following his resignation, is not evidence of a lost right. As the Court of Appeals noted in *Clark*, any potential loss of future employment does not rise to the level of a right or status contemplated by the Supreme Court in *Paul*. *Clark v. Township of Falls*, 890 F.2d at 620; *Sturm v. Clark*, 835 F.2d 1009 (3d Cir.1987).

At best, plaintiff Lahaza has alleged a claim that public knowledge of a criminal investigation caused injury to his reputation, which knowledge may have resulted in the loss of an election. This theory would effectively render virtually every criminal investigation actionable, under § 1983, if the public somehow became aware of it. This is clearly not what was intended by Congress in the drafting of 42 U.S.C. § 1983. *Paul* at 698–699, 96 S.Ct. at 1159. Accordingly, there is no valid procedural or substantive due process claim for the alleged violation of Lahaza's interest in his reputation.

Yolanda M. Lahaza also asserts that she suffered the loss of her good name and reputation. As stated above, the United States Supreme Court has held that reputation alone is not an interest protected by the Due Process Clause of the Fourteenth Amendment. *See Paul, supra.* Other than harm to reputation, Yolanda M. Lahaza identifies no other right or status which has been implicated. Accordingly, she fails to state a claim upon which relief can be granted. *Paul* at 701–712, 96 S.Ct. at 1160–1165.

■ Plaintiffs have also alleged a violation of their Sixth Amendment rights. Sixth Amendment guarantees, however, are applicable only in the context of criminal prosecutions.

> It is clear, however, the Sixth Amendment guarantees are applicable only in "criminal prosecutions," not civil proceedings, *Hullom v. Burrows*, 266 F.2d 547 (6th Cir.), *cert. denied*, 361 U.S. 919, 80 S.Ct. 262, 4 L.Ed.2d 187 (1959), and that every proceeding that results 'in loss of liberty does not *ipso facto* mean that the proceeding is a "criminal prosecution" for purposes of the Sixth Amendment.' *Middendorf v. Henry*, 425 U.S. 25, 37, 96 S.Ct. 1281, 1288, 47 L.Ed.2d 556 (1976).

*De Walt v. Barger*, 490 F.Supp. 1262, 1272 (M.D.Pa.1980). Plaintiffs have made no allegation of criminal prosecution. At best, Plaintiffs have alleged a conspiracy to initiate a criminal investigation, which investigation did not result in prosecution. No Sixth Amendment rights are implicated in the allegations of Plaintiffs' Complaint.[10]

■ Plaintiffs also assert state law claims. No diversity of citizenship under 28 U.S.C. § 1332(a) exists. Plaintiffs presumably base subject matter jurisdiction for these claims upon this Court's supplemental jurisdiction, under 28 U.S.C. § 1367(a).[11] Once the claims are dismissed under this Court's original jurisdiction, the Court has discretion whether to hear any remaining claims. We will decline to exer-

---

10. Because the Court has determined that plaintiffs have not stated a claim under 42 U.S.C. § 1983, plaintiffs' claim for attorney's fees under 42 U.S.C. § 1988 also fails.

11. Title 28 U.S.C. § 1367(a) states:
Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

cise supplemental jurisdiction over the state law claims here.[12] Accordingly, the state law claims will be dismissed.

### ORDER

AND NOW, this 31st day of March, 1992, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

1. The Motion of defendants Mary K. Smithson and Newtown Township, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' claims under 42 U.S.C. §§ 1983 and 1988, is GRANTED.

2. The Motion of defendants Gerald J. Azeff and Code Inspections, Inc., under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' claims under 42 U.S.C. §§ 1983 and 1988, is GRANTED.

3. The Motion of defendant Norman McGinnis, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss plaintiffs' claims under 42 U.S.C. §§ 1983 and 1988, is GRANTED.

4. All remaining claims are dismissed pursuant to 28 U.S.C. § 1367(c)(3).

---

12. Title 28 U.S.C. § 1367(c)(3) states:
The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(3) the district court has dismissed all claims over which it has original jurisdiction ...