Lisa EMANUELE and Nicholas Emanuele, Plaintiffs,

v.

THE TOWN OF GREENVILLE and Timothy McDonald, Defendants.

No. 00 CIV. 4214(CM).

United States District Court,
S.D. New York.

May 8, 2001.

328

Marc Smalec, White Plains, NY, for Plaintiffs.

Terry Rice, Suffern, NY, for Defendants.

## MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

McMAHON, District Judge.

Plaintiffs Lisa and Nicholas Emanuele sued defendants Town of Greenville and

the former Supervisor of Greenville, Timothy McDonald, pursuant to 42 U.S.C. § 1983, for retaliation and defamation in violation of their rights under the First and Fourteenth Amendments to the U.S. Constitution, and for intentional infliction of emotional distress. Defendants move for summary judgment.

For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

## FACTUAL BACKGROUND

On a motion for summary judgment, the Court views the facts most favorably to the non-moving party—in this case, the plaintiffs.

Plaintiff Lisa Emanuele was co-chairperson of the Democratic Committee in Greenville, New York. She was also a part-time records clerk for the Town of Greenville. She worked for defendant Timothy McDonald from March to May 1999.

McDonald was the Supervisor of the Town of Greenville from 1996 through 1999, elected for two successive two year terms. He was endorsed by the Democratic Party in 1995 and 1997. He ran for re-election in 1999 without the endorsement of the Democratic Party and lost his seat as Town Supervisor.

On June 6, 1999, an article appeared in the Times Herald Record entitled "Democrats Bounce McDonald." The article referred to plaintiff Lisa Emanuele by name, indicating that she did not want to endorse McDonald for re-election in the November 1999 election. That same day, Lisa Emanuele received a phone call from McDonald stating that she was going to receive a fine for building a deck on her home without a permit. Town records indicate that a building permit had, in fact, been issued to plaintiffs on June 2, 1999. McDonald also allegedly spoke to Councilman Joseph

Williams, and told him that he was going to "go after" the Emanueles for agricultural violations for having livestock on their property.

On June 8, 1999, Nicholas Emanuele made a written complaint to the Town Board regarding McDonald's behavior. On June 14, 1999, another local newspaper article appeared, indicating that McDonald was facing charges of ethics violations arising from Nicholas Emanuele's complaint.

That night, defendant appeared on the WALL Radio Station and announced that Lisa Emanuele had been fired for stealing cleaning supplies from the Town on March 19, 1999. McDonald claimed that he observed plaintiff steal the supplies, confronted her, recovered the items, and terminated her on the spot.

Lisa Emanuele testified that the first notice she had of being fired was when McDonald announced her termination on the radio. There is a letter in the record dated April 9, 1999, in which McDonald purports to terminate her employment as Records Management Secretary as a result of her stealing supplies. Emanuele contends that she never received any such letter, and time sheets indicate that she was still working as of April 21, 1999. Subsequently, McDonald sent a letter to residents of the Town of Greenville on May 14, 1999, telling them to contact Lisa Emanuele with questions about Town summer programs. (Emanuele Aff. at Ex. 6.) This, too, suggests that Emanuele was not fired in March 1999.

On or about June 22, 1999, McDonald approached Nicholas Emanuele and said that he would destroy him and get him fired from his job as a New York City Police Officer.

McDonald later was censured by the Town Board in response to a Nicholas Emanuele's complaint and testimony taken

from Lisa Emanuele. The censure cited McDonald's abuse of the power of his office arising out of the threats he made. The resolution stated, in part, that:

The Town Board reaffirms its policy that:

The Supervisor has a duty to report complaints and alleged violations of building, health and zoning codes to the Building Department; and

The Supervisor is prohibited from attempting to dictate or influence the performance or outcome of investigations conducted by the Building Department concerning complaints or alleged violations of the building[,] health or zoning codes.

(Def.Ex. K.) McDonald was "directed to strictly adhere to the above-stated policy of the Town Board." (Id.)

On August 26, 1999, McDonald stated on a local news show that "plaintiff was fired and now has an axe to grind." (Compl.¶ 26.)

Lisa Emanuele was a candidate for a seat on the Town Council in the fall of 1999, and was endorsed by the Democratic Committee at its June 4, 1999 meeting. She alleges that she lost the election as a result of McDonald's false allegations.

Plaintiffs bring retaliation and defamation claims under Section 1983, as well as a state law claim of intentional infliction of emotional distress. Both plaintiffs claim that McDonald retaliated against them by firing Lisa Emanuele on the radio,[1] making false statements, and by threatening to fine them for violations of local ordinances. Lisa Emanuele further claims that she lost her election to the Town Board as a result of McDonald's statements.

For the reasons stated below, defendants' motion for summary judgment is granted in part and denied in part.

## DISCUSSION

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if, based on the record as a whole, a reasonable jury could find in favor of the non-movant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In making its determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the pleadings and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106

---

1. Only the most generous reading of plaintiffs' Complaint supports the idea that Lisa Emanuele alleged retaliatory firing. However, while plaintiffs' Complaint does not specifically allege that McDonald fired Lisa Emanuele in retaliation for not endorsing him, it appears that plaintiffs intended to include this theory of retaliation. In their opposition brief, plaintiffs cite the legal standard for a First Amendment retaliation claim where an adverse employment action is taken. In Lisa Emanuele's affidavit, she also states that "McDonald falsely and maliciously injured my good name, reputation, honor and integrity and at the same time he fired me on the radio. I'm concerned the defamatory radio broadcast will foreclose future employment opportunities for me. *Clearly McDonald fired me on the radio because I was the co-chair of the Democratic Committee and I publicly expressed my refusal to endorse him for re-election.*" (L. Emanuele Aff. at ¶ 9.) (emphasis added). I am therefore reading the Complaint generously—especially as plaintiffs still have one year remaining on the three year statute of limitations for bringing such a claim.

S.Ct. 1348, 89 L.Ed.2d 538 (1986). When opposing a motion for summary judgment, it is not sufficient for the non-moving party to present evidence that is conclusory or speculative, with no basis in fact. *See Liberty Lobby*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### 1. Retaliation Claim

In their inartfully-pleaded Complaint, plaintiffs allege that McDonald tried to take action against them in retaliation for the County Committee's decision not to endorse him for reelection. The alleged retaliation took two forms: McDonald's threats to fine the Emanueles for their deck and to get Nicholas Emanule fired, and McDonald's alleged firing of Lisa Emanuele on the radio.

 Section 1983 authorizes a party who has been deprived of a federal right under the color of state law to seek relief through "an action at law, suit in equity, or other proper proceeding for redress." *See City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). A Section 1983 claim has two essential elements: (i) the defendant acted under color of state law; and (ii) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges. *See Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir.1998) (citation omitted).

 The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law made possible only because the wrongdoer is clothed with the authority of state law. *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). Generally, a person acts under color of law when he acts in his official capacity, irrespective of whether the challenged conduct advanced a state objective or constituted an abuse of the defendant's official power. *See Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir.1994) (citing *West*, 487 U.S. at 49–50, 108 S.Ct. 2250) (other citations omitted); *see also Monsky v. Moraghan*, 127 F.3d 243, 245 (" 'It is firmly established that a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State.' ") (quoting *West*, 487 U.S. at 49–50, 108 S.Ct. 2250). Moreover, "under 'color' of law means under 'pretense' of law." *Screws v. United States*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). One who lacks actual authority nonetheless acts under color of state law if he purports to act according to official power. *See Barna*, 42 F.3d at 816. This Court has little difficulty concluding that when the Town Supervisor fires an employee, or telephones a citizen of the town to tell him that he is going to be fined for building a deck without a permit, he is acting under color of law.

 That said, there are special rules a plaintiff must follow when alleging that adverse government action taken in retaliation for the exercise of protected speech violates the First Amendment. *Mozzochi v. Borden*, 959 F.2d 1174, 1179 (2d Cir. 1992). To prevail on such a claim, a plaintiff must allege and prove (i) that her speech was protected by the First Amendment, i.e., involved a matter of public concern, and (ii) that there was adverse government action was taken in retaliation for the exercise of such speech. *See, e.g., Brady v. Town of Colchester*, 863 F.2d 205, 217 (2d Cir.1988) (citing *Mount Healthy v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Where, as here, a plaintiff appears to assert a claim of retaliation in employment, they must show not only that the speech involved a matter of public concern, but also that the employee

suffered an adverse employment action for exercising her First Amendment rights, and that the employee's speech was a substantial or motivating factor in the adverse employment action. *Pappas v. Giuliani,* 118 F.Supp.2d 433 (S.D.N.Y.2000).

 Whether speech is a matter of public concern is a question of law to be determined by examining the "content, form, and context of a given statement, as revealed by the record." *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir.1994) (quoting *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). In this case, plaintiff was quoted in the newspaper in opposition to McDonald's candidacy for Town Supervisor. She made an independent decision, as co-chairperson of the Democratic Committee in Greenville, not to endorse McDonald for a third term. This Court considers Lisa Emanuele's decision not to endorse, and her remarks to that effect to the press, to be the quintessential matter of public concern.

 The question therefore is whether McDonald fired Lisa Emanuele (or threatened to fine the Emanueles) because of her decision not to endorse him. This presents a disputed issue of fact for a jury to consider. While there is no evidence that either plaintiff's speech was chilled as a result of McDonald's actions, there is a factual dispute over whether plaintiff's speech was a motivating factor in defendant's decision to fire her. *See Piesco v. Koch,* 12 F.3d 332, 342 (2d Cir.1993). The record reflects that the decision of the Democratic Committee and Lisa Emanuele not to endorse McDonald was published on June 6, 1999. On June 14, McDonald went on WALL Radio and announced that Lisa Emanuele had been fired for stealing cleaning supplies. Emanuele claims that she first learned that she was fired when she heard McDonald on the radio that night. There is a letter in the record dated April 9, 1999, in which defendant purports to terminate Emanuele for stealing, but Emanuele contends that she never received any such letter. It appears that she was still working as late as May 14, 1999, when McDonald sent a letter out to Town residents, telling them to contact Lisa Emanuele with questions about Town summer programs.

The parties dispute whether McDonald fired Emanuele as a result of her decision not to endorse him for re-election. Whether Lisa Emanuele was fired before or after the endorsement decision, and whether the non-endorsement was a motivating factor in McDonald's decision to fire her, are factual issues that are more properly reserved for a jury. Defendants' motion for summary judgment on the retaliatory firing claim is denied.

 To the extent that the retaliation claim is based on the threat of a fine or threat to Nicholas Emanuele's job—there appears to have been no consequence to those threats. There is no evidence that plaintiffs' First Amendment rights were chilled. To the contrary, Nicholas Emanuele went forward with his complaint against McDonald, and Lisa Emanuele proceeded with her campaign for the Town Board. Therefore, Nicholas Emanuele's claim against McDonald is dismissed. McDonald's threats may, however, be introduced, as evidence in support of the retaliatory firing claim.

2. Defamation

 Generally, defamation is not actionable under Section 1983. *See Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160–61, 47 L.Ed.2d 405 (1976). However, a section 1983 claim may lie when the false and stigmatizing statements, made by the government, are accompanied by a tangible injury to the victim of the statements.

*Id.* The Second Circuit has interpreted *Paul* "as holding that 'stigma plus' is required to establish a constitutional deprivation." *Neu v. Corcoran,* 869 F.2d 662, 667 (2d Cir.1989). A sullied reputation is insufficient for deprivation of a liberty interest. *Valmonte v. Bane,* 18 F.3d 992, 1001 (2d Cir.1994). Rather, the plaintiff must also allege the "plus," which may be "significant damage to a person's employment opportunities [or] dismissal from a government job or deprivation of some other legal right or status." *Neu,* 869 F.2d at 667.

 Therefore, in order to state a claim for defamation under Section 1983, a plaintiff must establish both that the statements at issue were defamatory and that they deprived her of a liberty or property interest. *See Siegert v. Gilley,* 500 U.S. 226, 233, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) ("Defamation by itself, is a tort actionable under the laws of most states but not a constitutional deprivation"), reh'g denied, 501 U.S. 1265, 111 S.Ct. 2920, 115 L.Ed.2d 1084 (1991); *Morris v. Lindau,* 196 F.3d 102, 114 (2d Cir.1999). "For a government employee, a federal cause of action for deprivation of a liberty interest arises when the alleged defamation occurs in the course of some negative alteration of the employee's status, such as dismissal or refusal to hire." *Morris,* 196 F.3d at 114 (citing *Neu,* 869 F.2d at 667).

 Lisa Emanuele may or may not have had a property right in her job as a records clerk (the record does not enable me to make such a determination). However, the sole basis for her allegation that she has been constitutionally defamed is the fact that she lost her election for a seat on the Town Board as a result of defendant's statements. She cannot prevail on that claim, because she has no property or liberty interest in being elected.

Courts have not allowed claims for defamation under 1983 when the allegation is loss of an election due to allegedly defamatory statements. *See Kaylor v. Fields,* 661 F.2d 1177 (8th Cir.1981); *Lahaza v. Azeff,* 790 F.Supp. 88 (E.D.Pa.1992); *Flinn v. Gordon,* 775 F.2d 1551 (11th Cir.1985). In *Kaylor* 661 F.2d 1177, plaintiff was a retired county judge who alleged that the local prosecutor had made continual, baseless accusations of criminal activity against him without filing any charges. The court concluded that the "only injury involved in these allegations is the possible harm to [plaintiff's] reputation[ ]. Such a defamation, without some resultant denial of a constitutional right, is not actionable under 1983." *Id.* at 1181 (citing *Paul,* 424 U.S. at 693, 96 S.Ct. 1155.)

Similarly, in *Lahaza,* 790 F.Supp. at 88, a candidate for local office filed a § 1983 suit against his opponent and others, claiming that defendants had initiated a criminal investigation against him, and that the "unfavorable publicity generated was a contributing factor in plaintiff's defeat in the Republican primary for Town Supervisor." *Id.* at 91. The court dismissed the claim, holding that, even if true, there is no federally protected right to win election to public office. *Id.* at 92.

Finally, in *Flinn,* 775 F.2d at 1551, plaintiff was a former state representative who sued former aides, another legislator, and the candidate who defeated him under Section 1983, alleging that they had conspired together to release slanderous accusations of sexual misconduct by him. The accusations were released while plaintiff was campaigning for re-election, allegedly damaging his reputation and causing him to lose re-election. The Eleventh Circuit dismissed the complaint, holding that while Flinn had a constitutional right to run for office and to hold office once elected, he had no constitutional right to win an elec-

tion. *Id.* The court made a "fundamental" distinction between expulsion or removal of a public official by the state and the same activity by the voters. *Id.* at 1554; *see also Pesano v. Anderson*, No. 97–Civ–4049, 1999 WL 232037 (S.D.N.Y. Apr. 13, 1999).

 If Lisa Emanuele is alleging a violation of some liberty interest in her reputation, that claim also fails. A person's interest in reputation alone is not a "liberty" guaranteed against state deprivation without due process of law. *Paul*, 424 U.S. at 693, 96 S.Ct. 1155. Lisa Emanuele does not have a right or status guaranteed by state law or the Constitution which has been extinguished as a result of any alleged harm to her reputation. Moreover, the fact that she was unable to win election to the Town Board is not evidence of a lost right. Any potential loss of future employment does not rise to the level of a right or status contemplated by the Supreme Court in *Paul. Clark v. Township Falls*, 890 F.2d 611 (3d Cir.1989).

Defendant McDonald's motion for summary judgment on the § 1983 defamation claim is therefore granted, and that claim is dismissed. Nicholas Emanuele has not pleaded a defamation claim.

### 3. Claims Against the Town of Greenville

 To recover against a municipality in a Section 1983 action, the plaintiff must establish that (1) the municipality had a policy or custom that was responsible for the alleged deprivation of constitutional rights, or (2) that a failure of supervision or lack of training is "so severe as to reach the level of 'gross negligence' or

'deliberate indifference' to the deprivation of plaintiff's constitutional rights." *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, municipal liability may also be imposed where a final policymaker of the municipality is personally responsible for the constitutional violation. *See McMillian v. Monroe County*, 520 U.S. 781, 784–86, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997). A final policymaker is an official of a municipality who "speak[s] with final policymaking authority" for the municipality "in a particular area, or on a particular issue." *Id.* at 785, 520 U.S. 781, 117 S.Ct. 1734, 138 L.Ed.2d 1. The question of who qualifies as a final policymaker is one of state law. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)). A municipal official that exercises discretion, whether it be in a constitutional or unconstitutional manner, in an area in which that official is not the final policymaker, cannot, by itself, establish municipal liability. *See Praprotnik*, 485 U.S. at 139–40, 108 S.Ct. 915, 99 L.Ed.2d 107 (Brennan, J., concurring).

 There is no allegation in this case that a municipality had a policy or custom that caused the deprivation of plaintiffs' rights. Nor is there any allegation that any such deprivation was caused by a failure to supervise or lack of adequate training. McDonald did not act pursuant to any policy; in fact, the action by the Town Board in censuring him was explicit in saying that McDonald acted against the established rules of conduct.[2] Because

**2.** The resolution stated:

The Town Board reaffirms its policy that:
 The Supervisor has a duty to report complaints and alleged violations of building,

health and zoning codes to the Building Department; and
 The Supervisor is prohibited from attempting to dictate or influence the performance or outcome of investigations

McDonald was an elected official, the Town Board could not fire him or take similar disciplinary action against him. That was for the voters to do—and they did.

McDonald was also not a final policymaker on the issuance of fines for building permits. According to the Greenville Code: all building permits "are issued by the Building Inspector." Greenville Code § 205–71. It further provides that "[t]he Planning Board shall make a decision upon the application [for building permits] within 62 days after the public hearing." *Id.* § 205–69(C). Because McDonald was not a final policymaker in the action he took—or attempted to take—Town of Greenville cannot be liable under § 1983.

The motion for summary judgment on behalf of the Town of Greenville is therefore granted.

4. Intentional Infliction of Emotional Distress

Defendants' motion for summary judgment on plaintiffs' claim for intentional infliction of emotional distress is also granted.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *Howell v. New York Post Co.*, 82 N.Y.2d 690, 601 N.Y.S.2d 572, 619 N.E.2d 650 (1993). Liability occurs only where the conduct is so outrageous in character, so extreme in degree, as to be atrocious, to

conducted by the Building Department concerning complaints or alleged violations of the building[,] health or zoning codes.

exceed all possible bounds of decency, and to be utterly intolerable in a civilized society. *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). New York courts have been "very strict in applying these principles." *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir.1985).

McDonald's act of claiming to fire Lisa Emanuele on the radio does not constitute intentional, deliberate and outrageous conduct so as to satisfy the "extreme and outrageous conduct" element of the cause of action. Courts have rejected claims of intentional infliction of emotional distress in cases where defendants' actions were far more extreme or outrageous than McDonald's. *See, e.g., Andrews v. Bruk*, 220 A.D.2d 376, 631 N.Y.S.2d 771 (2d Dep't 1995) (defendant/doctor obtained hospital documents showing that plaintiff underwent a vasectomy and then used the documents in a matrimonial action to support his contention that his wife was having an affair with the plaintiff); *Silverman v. New York Univ. School of Law*, 193 A.D.2d 411, 597 N.Y.S.2d 314 (1st Dep't 1993) (destroying a student's exam motivated by personal animus toward the student); *La Duke v. Lyons*, 250 A.D.2d 969, 673 N.Y.S.2d 240 (3d Dep't 1998) (intentionally relaying false information to a hospital that the plaintiff, a nurse, had euthanized a patient).

This Court agrees that McDonald's conduct, if proved at trial, was deplorable, but it was not so outrageous to satisfy the strict standards of intentional infliction of emotional distress. Furthermore, there is nothing in the record to indicate that McDonald intended to cause Lisa Emanuele severe emotional distress; nor is there any

(Def.Ex. K.)

evidence to suggest that she did, in fact, suffer such emotional distress. Accordingly, defendants' motion for summary judgment on this claim is granted and it is dismissed as well.

## CONCLUSION

Defendants' motion for summary judgment is granted as follows: all claims asserted by Nicholas Emanuele are dismissed; Lisa Emanuele's claims for § 1983 defamation and intentional infliction of emotional distress are dismissed. Lisa Emanuele's claim of § 1983 retaliatory firing is not dismissed. The Town of Greenville is dismissed as a defendant.

This constitutes the decision and order of the Court.